1 | LAWYERS FOR CLEAN WATER, INC.
2 | Daniel Cooper (Bar No. 153576)
  |     Email:  daniel@lawyersforcleanwater.com
3 | Caroline Koch (Bar No. 266068)
  |     Email:  caroline@lawyersforcleanwater.com
4 | 1004-A O'Reilly Avenue
5 | San Francisco, California 94129
  | Telephone:  (415) 440-6520
6 | Facsimile:  (415) 440-4155
7 |
  | *Attorneys for Plaintiffs*
8 | INLAND EMPIRE WATERKEEPER and ORANGE COUNTY COASTKEEPER
9 |
  | *Additional Plaintiffs' Counsel Listed On Next Page*
10 |

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

ED  CV  14  -  00069JGB (DTBX)

INLAND EMPIRE WATERKEEPER, a program of ORANGE COUNTY COASTKEEPER; ORANGE COUNTY COASTKEEPER, a California non-profit corporation,

             Plaintiffs,

        vs.

BURRTEC WASTE GROUP, INC., a California corporation; BURRTEC WASTE INDUSTRIES, INC., a California corporation; WEST VALLEY RECYCLING AND TRANSFER INC., a California corporation; WEST VALLEY MRF, LLC, a California limited liability company,

             Defendants.

Civil Case No.  00069JGB (DTBX)

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND CIVIL PENALTIES**

COPY

**(Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 *et seq.*)**

Complaint                                    1

INLAND EMPIRE WATERKEEPER
Colin Kelly (Bar No. 266956)
        Email:  colin@iewaterkeeper.org
6876 Indiana Avenue, Suite D
Riverside, California 92506
Telephone:  (951) 530-8823
Facsimile:  (951) 530-8824


ORANGE COUNTY COASTKEEPER
Colin Kelly (Bar No. 266956)
        Email:  colin@coastkeeper.org
3151 Airway Avenue, Suite F-110
Costa Mesa, California 92626
Telephone:  (714) 850-1965
Facsimile:  (714) 850-1592

Inland Empire Waterkeeper and Orange County Coastkeeper (collectively "Waterkeeper" or "Plaintiffs"), by and through their counsel, hereby allege:

## I.      JURISDICTION AND VENUE

1.      This is a civil suit brought under the citizen suit enforcement provision of the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 *et seq.* ("Clean Water Act" or "CWA"). *See* 33 U.S.C. § 1365. This Court has subject matter jurisdiction over the parties and this action pursuant to 33 U.S.C. § 1365(a)(1) and 28 U.S.C. §§ 1331 and 2201 (an action for declaratory and injunctive relief arising under the Constitution and laws of the United States).

2.      On 8 October 2013, Waterkeeper issued a sixty (60) day notice letter of intent to sue ("Notice Letter") to West Valley MRF, LLC, West Valley Recycling and Transfer, Inc., Burrtec Waste Industries, Inc., and Burrtec Waste Group, Inc. (collectively "Defendants") for their violations of the Clean Water Act and California's Permit for Discharges of Stormwater Associated with Industrial Activities. The Notice Letter was also sent to the registered agent for Defendants, as required by 40 C.F.R. § 135.2(a)(1). Finally, the Notice Letter was sent to the Administrator of the United States Environmental Protection Agency ("EPA"), the Administrator of EPA Region IX, the Executive Director of the State Water Resources Control Board ("State Board"), and the Executive Officer of the Regional Water Quality Control Board, Santa Ana Region ("Regional Board") as required by the CWA. 40 C.F.R. § 135.2(a)(1). The Notice Letter is attached hereto as Exhibit A and is incorporated herein by reference.

3.      More than sixty (60) days have passed since the Notice Letter was served on Defendants and the State and Federal agencies. Waterkeeper is informed and believes, and thereon alleges, that neither the EPA nor the State of California has commenced or is diligently prosecuting an action to redress the violations alleged in this complaint. *See* 33 U.S.C. § 1365(b)(1)(B). This action is not barred by any prior administrative penalty under Section 309(g) of the CWA. 33 U.S.C. § 1319(g).

4.      Venue is proper in the Central District of California pursuant to Section

1  505(c)(1) of the CWA, 33 U.S.C. § 1365(c)(1), because the sources of the violations are

2  located within this judicial district.

3  **II.    INTRODUCTION**

4      5.    This Complaint seeks relief for Defendants' substantive and procedural

5  violations of California's Permit for Discharges of Stormwater Associated with Industrial

6  Activities (National Pollution Discharge Elimination System General Permit No.

7  CAS000001, State Water Resources Control Board Water Quality Order No. 92-12-

8  DWQ, as amended by Order No. 97-03-DWQ) (hereinafter "Storm Water Permit")

9  resulting from their operations at 13373 Napa Street, Fontana, California, 92335 ("West

10  Valley Facility").

11      6.    Waterkeeper specifically alleges that Defendants' discharges of pollutants

12  from the West Valley Facility into waters of the United States; violations of the filing,

13  monitoring and reporting, and best management practice requirements; and violations of

14  other procedural and substantive requirements of the Storm Water Permit and the CWA

15  are ongoing and continuous.

16      7.    With every storm event, hundreds of millions of gallons of polluted

17  rainwater, originating from industrial operations such as the West Valley Facility, pour

18  into area surface waters. The consensus among agencies and water quality specialists is

19  that storm water pollution accounts for more than half of the total pollution entering the

20  marine and river environments each year. Surface waters are ecologically sensitive areas

21  and, although pollution and habitat destruction have drastically diminished once-

22  abundant and varied fisheries, surface waters are still essential habitat for dozens of fish

23  and bird species as well as macro-invertebrate and invertebrate species. Storm water

24  contaminated with sediment, heavy metals, and other pollutants harm the special

25  aesthetic and recreational significance that surface waters have for people in surrounding

26  communities. Public use of area surface waters for water contact sports exposes many

27  people to toxic metals and other contaminants in storm water and non-storm water

28  discharges. Non-contact recreational and aesthetic opportunities, such as wildlife

Complaint                                    4

observation, are also impaired by polluted discharges to those waters.

## III.     PARTIES

### A.     Inland Empire Waterkeeper and Orange County Coastkeeper.

8.     Inland Empire Waterkeeper is a program of Orange County Coastkeeper. Inland Empire Waterkeeper's office is located at 6876 Indiana Avenue, Suite D, Riverside, California 92506.

9.     Orange County Coastkeeper is a non-profit public benefit corporation organized under the laws of the State of California. Orange County Coastkeeper's office is located at 3151 Airway Avenue, Suite F-110, Costa Mesa, California 92626.

10.     Together, Inland Empire Waterkeeper and Orange County Coastkeeper have over 2,000 members who live and/or recreate in and around the Santa Ana River watershed. Waterkeeper is dedicated to the preservation, protection, and defense of the environment, wildlife, and natural resources of local surface waters. To further these goals, Waterkeeper actively seeks Federal and State agency implementation of the Clean Water Act, and, where necessary, directly initiates enforcement actions on behalf of itself and others.

11.     Waterkeeper members use and enjoy the Santa Ana River and its tributaries for fishing, boating, swimming, bird watching, picnicking, viewing wildlife, sailing, kayaking, hiking, and engaging in scientific study, including monitoring activities.

12.     Discharges of polluted storm water and non-storm water from the West Valley Facility degrade water quality and harm aquatic life in the Santa Ana River and its tributaries, and impair Waterkeeper's members' use and enjoyment of those waters.

13.     The violations of the Storm Water Permit at the West Valley Facility are ongoing and continuous. Thus, the interests of Waterkeeper's members have been, are being, and will continue to be adversely affected by Defendants' failure to comply with the Storm Water Permit and the CWA.

### B.     The West Valley Facility Owners and/or Operators.

14.     Waterkeeper is informed and believes, and thereon alleges, that West Valley

1 | MRF, LLC is an owner of the West Valley Facility.

2 |      15.    Waterkeeper is informed and believes, and thereon alleges, that West Valley

3 | MRF, LLC is an operator of the West Valley Facility.

4 |      16.    Waterkeeper is informed and believes, and thereon alleges, that West Valley

5 | Recycling and Transfer, Inc. is an owner of the West Valley Facility.

6 |      17.    Waterkeeper is informed and believes, and thereon alleges, that West Valley

7 | Recycling and Transfer, Inc. is an operator of the West Valley Facility.

8 |      18.    Waterkeeper is informed and believes, and thereon alleges, that Burrtec

9 | Waste Industries, Inc. is an owner of the West Valley Facility.

10 |      19.    Waterkeeper is informed and believes, and thereon alleges, that Burrtec

11 | Waste Industries, Inc. is an operator of the West Valley Facility.

12 |      20.    Waterkeeper is informed and believes, and thereon alleges, that Burrtec

13 | Waste Group, Inc. wholly owns Burrtec Waste Industries, Inc.

14 |      21.    Waterkeeper is informed and believes, and thereon alleges, that Burrtec

15 | Waste Group, Inc. is an owner of the West Valley Facility.

16 |      22.    Waterkeeper is informed and believes, and thereon alleges, that Burrtec

17 | Waste Group, Inc. is an operator of the West Valley Facility.

18 |      23.    Waterkeeper refers to West Valley MRF, LLC; West Valley Recycling and

19 | Transfer, Inc.; Burrtec Waste Industries, Inc.; and Burrtec Waste Group, Inc. collectively

20 | as "the West Valley Facility Owners and/or Operators."

21 |      24.    Waterkeeper is informed and believes, and thereon alleges, that West Valley

22 | MRF, LLC is an active limited liability company registered in California.

23 |      25.    Waterkeeper is informed and believes, and thereon alleges, that Burrtec

24 | Waste Group, Inc. is an active corporation registered in California.

25 |      26.    Waterkeeper is informed and believes, and thereon alleges, that Burrtec

26 | Waste Industries, Inc. is an active corporation registered in California.

27 |      27.    Waterkeeper is informed and believes, and thereon alleges, that West Valley

28 | Recycling and Transfer, Inc. is an active corporation registered in California.

Complaint               6

28.     Waterkeeper is informed and believes, and thereon alleges, that the name and address of the Registered Agent for West Valley MRF, LLC is Cole Burr, 9890 Cherry Avenue, Fontana, California 92335.

29.     Waterkeeper is informed and believes, and thereon alleges, that the name and address of the Registered Agent for West Valley Recycling and Transfer, Inc. is Cole Burr, 9890 Cherry Avenue, Fontana, California 92335.

30.     Waterkeeper is informed and believes, and thereon alleges, that the name and address of the Registered Agent for Burrtec Waste Industries, Inc. is Cole Burr, 9890 Cherry Avenue, Fontana, California 92335.

31.     Waterkeeper is informed and believes, and thereon alleges, that the name and address of the Registered Agent for Burrtec Waste Group, Inc. is Cole Burr, 9890 Cherry Avenue, Fontana, California 92335.

32.     Waterkeeper is informed and believes, and thereon alleges, that Burrtec Waste Group, Inc. and Burrtec Waste Industries, Inc. also operate multiple industrial facilities, including four located at: 988 North Waterman Canyon Road, Crestline, California 92325; 9890 Cherry Avenue, Fontana, California, 92335; 5455 Industrial Parkway, San Bernardino, California, 92407; and 1830 Agua Mansa Road, Riverside, California 92509 ("Burrtec Facilities").

33.     Plaintiffs seek relief for the unlawful discharges of pollutants into waters of the United States from Defendants' activities at the Burrtec Facilities in separate complaints filed with the Court. These matters are related, as they also allege violations of the Storm Water Permit against Burrtec Waste Group, Inc. and Burrtec Waste Industries, Inc., as well as other operators of the Burrtec Facilities. Waterkeeper will file Notices of Related Cases for these related actions as soon as practicable.

## IV.   LEGAL BACKGROUND

### A.   The Clean Water Act.

34.     Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), prohibits the discharge of any pollutant into waters of the United States unless the discharge complies

1  with various enumerated sections of the CWA. Among other things, section 301(a)

2  prohibits discharges not authorized by, or in violation of, the terms of a National

3  Pollutant Discharge Elimination System ("NPDES") permit issued pursuant to section

4  402 of the CWA, 33 U.S.C. §§ 1311(a) and 1342(b).

5     35.   Section 402(b) of the CWA, 33 U.S.C. § 1342(b), allows each state to

6  administer its own EPA-approved NPDES permit program for regulating the discharge of

7  pollutants, including discharges of polluted storm water.

8     36.   Section 402(b) of the CWA, 33 U.S.C. § 1342(b), establishes a framework

9  for regulating industrial storm water discharges under the NPDES program. States with

10  approved NPDES permit programs are authorized by section 402(b) to regulate industrial

11  storm water discharges through individual NPDES permits issued to dischargers and/or

12  through the issuance of a single, statewide, general NPDES permit applicable to all

13  industrial storm water dischargers. *See* 33 U.S.C. § 1342(b).

14     37.   In California, the State Board is charged with regulating pollutants to protect

15  California's water resources. *See* Cal. Water Code § 13001.

16     38.   The Storm Water Permit is a statewide general NPDES permit issued by the

17  State Board pursuant to section 402 of the CWA, 33 U.S.C. § 1342(b) and 40 C.F.R

18  § 123.25.

19     39.   In order to discharge storm water lawfully in California, industrial

20  dischargers must secure coverage under the Storm Water Permit and comply with its

21  terms, or obtain and comply with an individual NPDES permit.

22     40.   Violations of the Storm Water Permit are also violations of the CWA. *See*

23  Storm Water Permit, Section C(1).

24     41.   Section 505(a)(1) of the CWA, 33 U.S.C. § 1365(a)(1), provides for citizen

25  enforcement actions against any "person" who is alleged to be in violation of an "effluent

26  standard or limitation . . . or an order issued by the Administrator or a State with respect

27  to such a standard or limitation." *See* 33 U.S.C. §§ 1365(a)(i) and 1365(f).

28     42.   Burrtec Waste Industries, Inc. is a "person" within the meaning of section

1 | 502(5) of the Clean Water Act, 33 U.S.C. § 1362(5).

2 |     43.    Burrtec Waste Group, Inc. is a "person" within the meaning of section

3 | 502(5) of the Clean Water Act, 33 U.S.C. § 1362(5).

4 |     44.    West Valley MRF, LLC is a "person" within the meaning of section 502(5)

5 | of the Clean Water Act, 33 U.S.C. § 1362(5).

6 |     45.    West Valley Recycling and Transfer, Inc. is a "person" within the meaning

7 | of section 502(5) of the Clean Water Act, 33 U.S.C. § 1362(5).

8 |     46.    An action for injunctive relief is authorized under section 505(a) of the

9 | CWA, 33 U.S.C. § 1365(a).

10 |     47.    Each separate violation of the Clean Water Act subjects the violator to a

11 | penalty of up to $32,500 per day per violation for violations occurring prior to 12 January

12 | 2009, and $37,500 per day per violation for violations occurring on and after 12 January

13 | 2009. 33 U.S.C. §§ 1319(d) and 1365(a); Adjustment of Civil Monetary Penalties for

14 | Inflation, 40 C.F.R. § 19.4.

15 |     48.    Section 505(d) of the Clean Water Act, 33 U.S.C. § 1365(d), allows

16 | prevailing or substantially prevailing parties to recover litigation costs, including

17 | attorneys' fees, experts' fees, and consultants' fees.

18 | **B.    The Storm Water Permit's Effluent Limitations, Receiving Water**

19 | **       Limitations, and Discharge Prohibitions.**

20 |     49.    Effluent Limitation B(3) of the Storm Water Permit requires dischargers to

21 | reduce or prevent pollutants associated with industrial activity in storm water discharges

22 | through the implementation of Best Available Technology Economically Achievable

23 | ("BAT") for toxic or non-conventional pollutants and Best Conventional Pollutant

24 | Control Technology ("BCT") for conventional pollutants. Toxic pollutants are listed at 40

25 | C.F.R. § 401.15 and include copper, lead, and zinc, among others. Conventional

26 | pollutants are listed at 40 C.F.R. § 401.16 and include biological oxygen demand

27 | ("BOD"), total suspended solids ("TSS"), oil and grease ("O&G"), pH, and fecal

28 | coliform, among others.

50.     EPA's NPDES Multi-Sector General Permit for Stormwater Discharges Associated With Industrial Activity ("MSGP") sets numeric benchmarks for pollutant concentrations in storm water discharges ("EPA Benchmarks").

51.     The EPA Benchmarks provide an objective standard to determine whether a facility's Best Management Practices ("BMPs") are successfully developed and/or implemented. *See* MSGP Fact Sheet, at 95 (2008) *available at* http://www.epa.gov/npdes/pubs/msgp2008_finalfs.pdf.

52.     Discharges from an industrial facility containing pollutant concentrations that exceed EPA Benchmarks indicate that the facility has not successfully developed and/or implemented BMPs that meet BAT for toxic pollutants and BCT for conventional pollutants, in violation of Effluent Limitation B(3). *Id.*

53.     Receiving Water Limitation C(1) of the Storm Water Permit prohibits storm water and non-storm water discharges that adversely impact human health or the environment.

54.     Discharges with pollutant levels that exceed levels known to adversely impact human health and the environment are violations of Receiving Water Limitation C(1) of the Storm Water Permit.

55.     Receiving Water Limitation C(2) of the Storm Water Permit prohibits storm water and non-storm water discharges that "cause or contribute to an exceedance of any applicable water quality standard in a Statewide Water Quality Control Plan or the applicable Regional Board's Basin Plan."

56.     Water Quality Standards ("WQS") are pollutant concentration levels determined by the State Board, the various regional boards, and the EPA, to be protective of the beneficial uses of the waters that receive polluted discharges. The Water Quality Control Plan for the Santa Ana River Basin, California Regional Water Quality Control Board, Santa Ana Region, 3rd Ed. (Rev. June 2011) ("Basin Plan"), identifies the "Beneficial Uses" of water bodies in the region.

57.     The Beneficial Uses for the Santa Ana River near and downstream of the

1  point at which it receives polluted discharges from the West Valley Facility via the San

2  Sevaine Channel (e.g. Santa Ana River Reaches 1-3) are: Agricultural Supply;

3  Groundwater Recharge; Water Contact Recreation; Non-contact Water Recreation; Warm

4  Freshwater Habitat; Wildlife Habitat; and Rare, Threatened or Endangered Species. *See*

5  Basin Plan, Table 3-1.

6      58.    Discharges of pollutants at levels above WQS contribute to the impairment

7  of the Beneficial Uses of the waters receiving the discharges.

8      59.    Surface waters that cannot support the Beneficial Uses of those waters listed

9  in the Basin Plan are designated as impaired water bodies pursuant to section 303(d) of

10  the Clean Water Act. 33 U.S.C. § 1365(d).

11      60.    The 2010 303(d) List of Impaired Water Bodies identifies the San Sevaine

12  Channel as impaired for copper, lead, and pathogens.[1]

13      61.    The 2010 303(d) List of Impaired Water Bodies identifies Reach 3 of the

14  Santa Ana River, into which the San Sevaine Channel drains, as impaired for copper,

15  lead, and pathogens. *Id.*

16      62.    Reach 2 of the Santa Ana River as impaired for indicator bacteria. *Id.*

17      63.    WQS applicable to dischargers covered by the Storm Water Permit include,

18  but are not limited to, those set out in the Basin Plan and in the Criteria for Priority Toxic

19  Pollutants for the State of California ("CTR"), 40 C.F.R. § 131.38.

20      64.    The CTR includes numeric criteria set to protect human health and the

21  environment in the State of California.[2]

22      65.    Discharges that cause or contribute to pollutant levels in receiving waters

23  that exceed the CTR criteria, the Basin Plan, and/or other applicable WQS are violations

24

25  [1] 2010 Integrated Report – All Assessed Waters, *available at:*

26  http://www.waterboards.ca.gov/water_issues/programs/tmdl/integrated2010.shtml (last accessed on November 1, 2013).

27  [2] Water Quality Standards; Establishment of Numeric Criteria for Priority Toxic

28  Pollutants for the State of California Factsheet, EPA-823-00-008, April 2000 *available at* http://water.epa.gov/lawsregs/rulesregs/ctr/factsheet.cfm.

Complaint           11

of Receiving Water Limitation C(2) of the Storm Water Permit.

66.     Except as otherwise authorized, Discharge Prohibition A(1) of the Storm Water Permit prohibits permittees from discharging materials other than storm water (non-storm water discharges) either directly or indirectly to waters of the United States. Prohibited non-storm water discharges must be either eliminated or permitted by a separate NPDES permit. *See* Storm Water Permit, Discharge Prohibition A(1).

67.     Unauthorized discharges of materials other than storm water (non-storm water) are violations of Discharge Prohibition A(1) of the Storm Water Permit.

**C.     The Storm Water Permit's Storm Water Pollution Prevention Plan Requirements.**

68.     Section A(1) and Provision E(2) of the Storm Water Permit require dischargers to develop and implement a Storm Water Pollution Prevention Plan ("SWPPP") that complies with the requirements of the Storm Water Permit prior to commencing industrial activities.

69.     The objectives of the SWPPP are to identify and evaluate sources of pollutants associated with industrial activities that may affect the quality of storm water discharges, to identify and implement site-specific BMPs to prevent the exposure of pollutants to storm water, and to reduce or prevent the discharge of polluted storm water from industrial facilities. Storm Water Permit, Section A(2).

70.     Section A(3) of the Storm Water Permit requires a discharger to identify the members of its on-site Storm Water Pollution Prevention Team and to indicate each team member's responsibilities in developing, implementing, and revising the SWPPP to ensure compliance with the Storm Water Permit.

71.     Section A(4) of the Storm Water Permit requires that the SWPPP include a site map that indicates specified information, including, but not limited to: the facility boundaries; an outline of all storm water drainage areas within the facility boundaries; storm water drainage areas and directions of flow for each drainage area; on-site surface water bodies; nearby water bodies; areas of soil erosion; municipal storm drain inlets

where the facility's storm water discharges may be received; the location of the storm water collection, conveyance and discharge system and structural control measures that affect storm water discharges; an outline of all impervious areas of the facility, including paved areas, buildings, covered storage areas, and other roofed structures; locations where materials are directly exposed to precipitation and where significant spills or leaks have occurred; and all areas of industrial activity, including areas that are actual and potential pollutant sources.

72.     Section A(5) of the Storm Water Permit requires that the SWPPP include a list of significant materials handled and stored at the site. For each material identified on the list, the discharger must describe certain specified information, including locations where the material is typically stored, received, and handled, as well as typical quantities and frequency of the material at the facility.

73.     Section A(6) of the Storm Water Permit requires a discharger to include in its facility SWPPP a narrative description of the facility's industrial activities, associated potential pollutant sources, and potential pollutants that could be discharged in storm water discharges or authorized non-storm water discharges. Section A(6) also requires the facility SWPPP to include a table summarizing such information and linking potential pollutant sources to specific control measures.

74.     Section A(7) of the Storm Water Permit requires a discharger to include in its facility SWPPP a narrative evaluation of all industrial activities and potential pollutant sources at the facility.

75.     Section A(8) of the Storm Water Permit requires a discharger to include in its facility SWPPP a narrative description and a summary of the storm water BMPs to be implemented at the facility. Each BMP must be linked to the potential pollutant source it is intended to remedy. BMPs must be described for all potential pollutant sources at the facility, including those identified pursuant to Sections A(6) and A(7) of the Storm Water Permit.

76.     Section A(9) of the Storm Water Permit requires the discharger to evaluate

1  the SWPPP on an annual basis and revise it as necessary to ensure compliance with the

2  Storm Water Permit.

3      77.    Sections A(9)(a)-(c) of the Storm Water Permit require that the discharger

4  conduct an Annual Comprehensive Site Compliance Evaluation ("ACSCE Report") that

5  includes a review of all visual observation records, inspection reports, and sampling and

6  analysis results; a visual inspection of all potential pollutant sources for evidence of, or

7  the potential for, pollutants entering the drainage system; a review and evaluation of all

8  BMPs to determine whether the BMPs are adequate, properly implemented, and

9  maintained, or whether additional BMPs are needed; and a visual inspection of

10  equipment needed to implement the SWPPP.

11      78.    Section A(9)(d) of the Storm Water Permit requires that the ACSCE Report

12  include an identification of personnel performing the evaluation, the date(s) of the

13  evaluation(s), necessary SWPPP revisions, a schedule for implementing SWPPP

14  revisions, any instances of non-compliance and the corrective actions taken, and a

15  certification that the discharger is in compliance with the Storm Water Permit. If

16  certification of compliance cannot be provided, the discharger must explain in the

17  ACSCE Report why the facility is not in compliance with the Storm Water Permit. The

18  ACSCE Report shall be submitted as part of the Annual Report specified in Section

19  B(14) of the Storm Water Permit.

20      79.    Section A(10)(d) of the Storm Water Permit requires a facility to revise and

21  implement the revised SWPPP within ninety (90) days after the facility operator

22  determines that its SWPPP is not in compliance with the Storm Water Permit.

23      **D.    The Storm Water Permit's Monitoring and Reporting Requirements.**

24      80.    Provision E(3) and Section B(1) of the Storm Water Permit require

25  dischargers to develop and implement a Monitoring and Reporting Program ("M&RP")

26  when industrial activities commence.

27      81.    The objectives of the M&RP are to ensure that BMPs have been adequately

28  developed, implemented, and revised if necessary, and to ensure that storm water and

non-storm water discharges are in compliance with the Storm Water Permit's Discharge Prohibitions, Effluent Limitations, and Receiving Water Limitations. Storm Water Permit, Sections B(2)(a) and B(2)(b).

82.    The M&RP aids in the implementation and revision of the SWPPP and measures the effectiveness of BMPs to prevent or reduce pollutants in storm water discharges. Storm Water Permit, Sections B(2)(c) and B(2)(d).

83.    Section B(2)(d) of the Storm Water Permit requires that the M&RP be revised as necessary to ensure compliance with the Storm Water Permit.

84.    Section B(3) of the Storm Water Permit requires a discharger to conduct visual observations of all drainage areas within the facility for the presence of authorized and unauthorized non-storm water discharges. Observations under this section must occur during daylight hours, on days with no storm water discharges, and during scheduled facility operating hours.

85.    Section B(4) of the Storm Water Permit requires a discharger to conduct visual observations of storm water discharges during at least one storm event per month during the Wet Season (October 1 – May 1) in the first hour of discharge at each discharge location. Observations under this section must take place during daylight hours, when the discharge is preceded by at least three (3) days without storm water discharges, and during scheduled facility operating hours.

86.    Both Sections B(3) and B(4) of the Storm Water Permit require a discharger to document and record visual observations. Records of observation must describe the presence of any floating or suspended materials, O&G, discolorations, turbidity, odor, and the source of any pollutants observed during the visual observations. Dischargers must maintain records of visual observations that include the observation date, locations observed, and responses taken to eliminate unauthorized non-storm water discharges and to reduce or prevent pollutants from contacting non-storm water and storm water discharges. Furthermore, Sections B(3) and B(4) require a discharger to revise its facility SWPPP in order to rectify any instances of noncompliance observed during visual

1    observations.

2        87.    Sections B(5) and (7) of the Storm Water Permit require a discharger to

3    visually observe and collect samples of storm water discharges from all locations where

4    storm water is discharged.

5        88.    Section B(5)(a) of the Storm Water Permit requires a discharger to collect

6    storm water samples during the first hour of discharge from the first storm event of the

7    Wet Season and at least one other storm event during the Wet Season. All storm water

8    discharge locations must be sampled. *See* Storm Water Permit, Section B(5)(a). Facility

9    operators that do not collect samples from the first storm event of the Wet Season are still

10   required to collect samples from two other storm events of the Wet Season and must

11   explain in the Annual Report why the first storm event was not sampled. *Id.*

12       89.    Section B(5)(b) of the Storm Water Permit requires that sampling conducted

13   pursuant to the Storm Water Permit occur during scheduled facility operating hours that

14   are preceded by at least three (3) working days without storm water discharge.

15       90.    Section B(5)(c)(i) of the Storm Water Permit requires dischargers to analyze

16   each sample for pH, specific conductance ("SC"), TSS, and total organic carbon

17   ("TOC"). A discharger may elect to analyze for O&G instead of TOC.

18       91.    Section B(5)(c)(ii) of the Storm Water Permit requires dischargers to

19   analyze each sample for toxic chemicals and other pollutants likely to be present in the

20   storm water discharged from the facility in significant quantities.

21       92.    Section B(5)(c)(iii) of the Storm Water Permit requires dischargers to

22   analyze storm water samples for additional parameters depending on the facility's

23   Standard Industrial Classification ("SIC") code, as indicated in Table D of the Storm

24   Water Permit. Facilities classified as SIC code 4953 (Hazardous Waste Treatment

25   Storage or Disposal Facilities) must analyze samples for ammonia, magnesium, COD,

26   arsenic, cadmium, cyanide, lead, mercury, selenium, and silver, in addition to parameters

27   identified elsewhere in the Storm Water Permit. Storm Water Permit, Table D, Sector K.

28   Facilities classified as SIC code 5093 must analyze samples for TSS, iron, lead,

---

Complaint                                      16

1  aluminum, copper, zinc, and chemical oxygen demand ("COD"), in addition to

2  parameters identified elsewhere in the Storm Water Permit. Storm Water Permit, Table

3  D, Sector N.

4      93.    Section B(14) of the Storm Water Permit requires that dischargers submit an

5  Annual Report to the applicable regional board by 1 July of each year. The Annual

6  Report must include a summary of visual observations and sampling results, an

7  evaluation of the visual observations and sampling and analysis results, laboratory

8  reports, the ACSCE Report specified in Section A(9), an explanation of why a facility did

9  not implement any activities required by the Storm Water Permit, and the records

10  specified in Section B(13).

11      94.    Section C(9) of the Storm Water Permit requires that all reports,

12  certifications, and other information required by the Storm Water Permit or requested by

13  a regional board be signed by an authorized representative of the facility's operators.

14      95.    Section C(10) of the Storm Water Permit requires any signatory subject to

15  Section C(9) to make the following certification: "I certify under penalty of law that this

16  document and all attachments were prepared under my direction or supervision in

17  accordance with a system designed to ensure that qualified personnel properly gather and

18  evaluate the information submitted. Based on my inquiry of the person or persons who

19  manage the system, or those persons directly responsible for gathering the information,

20  the information submitted is to the best of my knowledge and belief, true, accurate, and

21  complete. I am aware that there are significant penalties for submitting false information,

22  including the possibility of fine and imprisonment for knowing violations."

23      96.    Section C(11)(b) of the Storm Water Permit requires facility operators to

24  give advance notice to the regional board or local storm water agency of anticipated

25  noncompliance with the Storm Water Permit.

26      97.    Section C(11)(d) of the Storm Water Permit requires facility operators to

27  report any incidence of noncompliance with the Storm Water Permit at the time

28  monitoring reports are submitted. Reports of noncompliance must contain: (1) a

1  description of noncompliance and its cause; (2) the period of noncompliance, including

2  exact dates and times, and if the noncompliance has not been corrected, the anticipated

3  time it is expected to continue; and (3) steps taken or planned to reduce or prevent

4  recurrence of the noncompliance.

5  **V.    FACTUAL BACKGROUND**

6     **A.    The West Valley Facility's Storm Water Permit Coverage.**

7        98.    Information available to Waterkeeper indicates that the State Board Storm

8  Water Multiple Application & Report Tracking System ("SMARTS") shows that the

9  State Board confirmed receipt of a Notice of Intent to Comply with the Terms of the

10  General Permit to Discharge Storm Water Associated with Industrial Activity ("NOI")

11  for the West Valley Facility on 18 February 1998 ("1998 NOI Receipt").

12        99.    Information available to Waterkeeper indicates that the West Valley Facility

13  submitted a second NOI to the Regional Board on 9 July 2012 ("2012 NOI").

14        100.   The 2012 NOI identifies the Facility name and location as "West Valley Mrf

15  LLC, 13373 Napa St., Fontana, CA 92335."

16        101.   The 2012 NOI identifies the Facility operator as "West Valley Mrf, LLC,

17  13373 Napa St., Fontana, CA 92335."

18        102.   Information available to Waterkeeper indicates that SMARTS identifies the

19  Facility name and location as "West Valley Mrf LLC, 13373 Napa St., Fontana,

20  California 92335."

21        103.   Information available to Waterkeeper indicates that SMARTS lists the West

22  Valley Facility's coverage under the Storm Water Permit as "Active."

23        104.   The 2012 NOI and SMARTS list the West Valley Facility Waste Discharger

24  Identification Number ("WDID") as 8 36I013750.

25        105.   The 1998 NOI Receipt and 2012 NOI list the SIC codes for the Facility as

26  4212 (Local Trucking, Without Storage) and 5093 (Scrap Recycling Facilities).

27        106.   The West Valley Facility SWPPP identifies the Facility's SIC codes as:

28  4212, 4953 (Hazardous Waste Treatment Storage and Disposal Facilities), and 5093.

Complaint                                 18

1    107.   Waterkeeper is informed and believes, and thereon alleges, that the

2    applicable SIC codes for the West Valley Facility are 4212, 5093, and 4953.

3    108.   Waterkeeper is informed and believes, and thereon alleges, that Defendants

4    have never amended their 1998 NOI or 2012 NOI to include SIC code 4953 as applicable

5    to the Facility.

6    109.   For facilities classified as 4212, the Storm Water Permit requires permit

7    coverage only for the portions of the facility involved in vehicle maintenance (including

8    repair, rehabilitation, lubrication, painting and fueling), and other operations associated

9    with industrial activity. Storm Water Permit, Attachment 1, Section 8.

10   110.   A facility classified under SIC codes 4953 and 5093 requires Storm Water

11   Permit coverage for the entire facility. Storm Water Permit, Attachment 1, Sections 4, 6.

12   111.   Waterkeeper is informed and believes, and thereon alleges, that the West

13   Valley Facility is approximately 29.2 acres in size.

14   112.   The 2012 NOI indicates that the West Valley Facility Owners and/or

15   Operators applied for Storm Water Permit coverage for twenty-nine (29) acres of the

16   Facility.

17   **B.    Industrial Activities at The West Valley Facility.**

18   113.   Waterkeeper is informed and believes, and thereon alleges, that industrial

19   activities conducted at the West Valley Facility include, but are not limited to:

20   processing, loading, and unloading of solid waste and recyclable materials, such as

21   hazardous materials, green/wood waste, and construction/demolition materials; storage of

22   solid waste materials including, but not limited to, household hazardous materials;

23   vehicle and equipment cleaning, fueling, maintenance, and storage; and storage of

24   materials associated with vehicle and equipment maintenance.

25   114.   Waterkeeper is informed and believes, and thereon alleges, that hazardous

26   materials, including, but not limited to, oil, paint, hydraulic fluid, brake fluid, and

27   antifreeze are generated and/or stored at the West Valley Facility.

28   115.   Waterkeeper is informed and believes, and thereon alleges, that industrial

1   activities at the West Valley Facility are conducted outdoors and without cover.

2        116.   Waterkeeper is informed and believes, and thereon alleges, that outdoor

3   industrial activities at the West Valley Facility are conducted without secondary

4   containment or other measures to prevent polluted discharges from the Facility.

5        117.   Waterkeeper is informed and believes, and thereon alleges, that pollutants

6   associated with the West Valley Facility include, but are not limited to: O&G; hydraulic

7   fluids; transmission fluid; antifreeze; heavy metals, such as copper, iron, lead, aluminum,

8   and zinc; TSS; nutrients; pathogens; and fugitive and other dust, dirt, and debris.

9        118.   The West Valley Facility SWPPP lists the following potential pollutants

10  present at the Facility: acids and bases; aromatic hydrocarbons; COD; chlorides;

11  chlorinated hydrocarbons; metals; O&G; organic carbons; and sulfates.

12       119.   Waterkeeper is informed and believes, and thereon alleges, that sources of

13  pollutants at the West Valley Facility include, but are not limited to: material processing,

14  including green and other waste and recyclables; vehicle and equipment storage,

15  cleaning, fueling, and maintenance; hazardous waste storage; storage of materials

16  associated with vehicle maintenance and repair; parking areas; loading, unloading, and

17  scaling areas; and other industrial activities.

18       120.   Waterkeeper is informed and believes, and thereon alleges, that the West

19  Valley Facility Owners and/or Operators have failed and continue to fail to adequately

20  develop and/or implement BMPs to prevent the exposure of pollutants and their sources

21  to storm water at the West Valley Facility.

22       121.   Waterkeeper is informed and believes, and thereon alleges, that the West

23  Valley Facility Owners and/or Operators have failed and continue to fail to adequately

24  develop and/or implement BMPs sufficient to prevent polluted storm water from

25  discharging from the West Valley Facility.

26       122.   Waterkeeper is informed and believes, and thereon alleges, that the West

27  Valley Facility Owners and/or Operators have failed and continue to fail to adequately

28  develop and/or implement required BMPs to prevent prohibited non-storm water

1  discharges from the West Valley Facility.

2      123.   Waterkeeper is informed and believes, and thereon alleges, that the West

3  Valley Facility Owners' and/or Operators' failure to properly address pollutants and their

4  sources results in the discharge of polluted storm water and/or non-storm water from the

5  West Valley Facility.

6      **C.    Discharge Locations at the West Valley Facility.**

7      124.   The West Valley Facility SWPPP states that there are two storm drain lines

8  ("Line A" and "Line B") into which all storm water at the Facility drains.

9      125.   Both Line A and Line B have storm water filter devices through which storm

10  water flows before it is discharged into a channel (identified on the site map as "Existing

11  Concrete Channel") directly to the east of the Facility.

12      126.   The Existing Concrete Channel empties into the San Sevaine Channel.

13      127.   The West Valley Facility 2012-2013 Annual Report indicates that there are

14  four (4) discharge points at the Facility, which are labeled: "DP 1 Greenwaste Drain,"

15  "DP 2 Southwest Drain (MP1)," "DP 3 Center Inlet," and "DP 4 Clarifier Test Point."

16      128.   Neither the West Valley Facility SWPPP or the SWPPP site map identify the

17  locations of the discharge points identified in the 2012-2013 Annual Report.

18      129.   Waterkeeper is informed and believes, and thereon alleges, that there are at

19  least eleven (11) discharge points at the West Valley Facility, including, but not limited

20  to: the point at which Line A discharges to the Existing Concrete Channel; the point at

21  which Line B discharges to the Existing Concrete Channel; eastward storm water flow

22  from the parking lot into Existing Concrete Channel; westward flow of storm water from

23  areas identified on the site map as "Drainage Area A" and "Drainage Area E" onto the

24  adjacent lot; the western curb of the western driveway to the Facility, from which water

25  flows to Napa Street; the eastern curb of the western driveway to the Facility, from which

26  water flows to Napa Street; the western curb of the eastern driveway to the Facility, from

27  which water flows to Napa Street; the eastern curb of the eastern driveway to the Facility,

28  from which water flows to Napa Street; and three drain outlets to Napa Street.

Complaint                    21

1    130.   Waterkeeper is informed and believes, and thereon alleges, that the West

2    Valley Facility SWPPP identifies only the discharge points described in paragraph 124,

3    and does not identify any other discharge points, including, but not limited to, those

4    described in paragraph 129.

5    131.   Waterkeeper is informed and believes, and thereon alleges, that the West

6    Valley Facility Owners and/or Operators have failed and continue to fail to collect storm

7    water samples from all discharge points at the Facility.

8    **D.     The West Valley Facility's Discharges to Receiving Waters.**

9    132.   Waterkeeper is informed and believes, and thereon alleges, that discharges

10   from the West Valley Facility enter the San Sevaine Channel and flow to the Santa Ana

11   River (collectively "Receiving Waters").

12   133.   Waterkeeper is informed and believes, and thereon alleges, that the San

13   Sevaine Channel and the Santa Ana River are waters of the United States and/or

14   tributaries thereto, and are subject to protection under the CWA.

15   134.   Waterkeeper is informed and believes, and thereon alleges, that polluted

16   storm water and non-storm water discharges from the West Valley Facility to the

17   Receiving Waters.

18   135.   Waterkeeper is informed and believes, and thereon alleges, that polluted

19   discharges from the West Valley Facility adversely impact human health and the

20   environment, and contribute to the degradation of the San Sevaine Channel and the Santa

21   Ana River, which are impaired surface waters.

22   136.   Waterkeeper is informed and believes, and thereon alleges, that samples of

23   storm water discharges collected at the West Valley Facility contain levels of pollutants,

24   including COD, copper, iron, aluminum, TOC, pH, SC, TSS, lead, zinc, and pathogens

25   such as *E. coli* and coliform bacteria, in excess of levels known to adversely impact

26   aquatic species and the environment, WQS, and EPA Benchmarks, in violation of the

27   Storm Water Permit's Effluent Limitations and Receiving Water Limitations.

28

137.   Exceedances of EPA Benchmarks indicate that a facility has not developed and/or implemented adequate BMPs to achieve compliance with BAT/BCT standards, as required by the Storm Water Permit Effluent Limitation B(3) and the Clean Water Act.

138.  Waterkeeper is informed and believes, and thereon alleges, that the West Valley Facility Owners and/or Operators have not developed or implemented sufficient BMPs to reduce the levels of pollutants in the West Valley Facility's storm water discharges to levels that do not adversely impact human health or the environment, as required by Receiving Water Limitation C(1).

139.  Waterkeeper is informed and believes, and thereon alleges, that the West Valley Facility Owners and/or Operators have not developed or implemented sufficient BMPs to reduce the levels of pollutants in the West Valley Facility's storm water discharges to levels that do not cause or contribute to exceedances of applicable WQS, as required by Receiving Water Limitation C(2).

140.  Waterkeeper is informed and believes, and thereon alleges, that during every significant rain event or any other storm water discharge that has occurred at the West Valley Facility since 18 October 2008 through the present, the West Valley Facility Owners and/or Operators have discharged and continue to discharge storm water from the West Valley Facility that contains contaminants at levels that violate the prohibitions and limitations set forth in the Storm Water Permit.

**E.    Defendants' Prohibited Non-Storm Water Discharges.**

141.  Waterkeeper is informed and believes, and thereon alleges, that water is used for dust control at the West Valley Facility.

142.  Waterkeeper is informed and believes, and thereon alleges, that water used for dust control at the West Valley Facility results in non-storm water discharges from the Facility to the Receiving Waters.

143.  Waterkeeper is informed and believes, and thereon alleges, that water is used for washing and cleaning activities at the West Valley Facility.

144.  Waterkeeper is informed and believes, and thereon alleges, that water used

1  for washing and cleaning activities at the West Valley Facility results in non-storm water
2  discharges from the Facility to the Receiving Waters.

3     145.  Waterkeeper is informed and believes, and thereon alleges, that BMPs have
4  not been developed and/or implemented to prevent non-storm water from discharging
5  from the West Valley Facility.

6     146.  Waterkeeper is informed and believes, and thereon alleges, that prohibited
7  non-storm water discharges from the West Valley Facility to the Receiving Waters in
8  violation of Discharge Prohibition A(1).

9  **F.  Defendants' Failure to Comply with the Storm Water Permit's SWPPP**
10    **Requirements.**

11    147.  Waterkeeper is informed and believes, and thereon alleges, that the West
12  Valley Facility Owners and/or Operators failed and continue to fail to develop an
13  adequate SWPPP for the West Valley Facility that complies with Section A of the Storm
14  Water Permit.

15    148.  Waterkeeper is informed and believes, and thereon alleges, that the West
16  Valley Facility Owners and/or Operators failed and continue to fail to implement an
17  adequate SWPPP for the West Valley Facility that complies with Section A of the Storm
18  Water Permit.

19    149.  Waterkeeper is informed and believes, and thereon alleges, that the West
20  Valley Facility Owners and/or Operators failed and continue to fail to identify in the
21  Facility SWPPP the current SWPPP team members and their assigned responsibilities,
22  duties, and activities for ensuring Storm Water Permit compliance, as required by Section
23  A(3) of the Storm Water Permit.

24    150.  Waterkeeper is informed and believes, and thereon alleges, that the West
25  Valley Facility SWPPP site map is incomplete in at least the following ways: it fails to
26  identify all discharge points at the Facility; it does not include the Facility's storm water
27  collection and conveyance system; it fails to identify all areas of industrial activity at the
28  Facility, including a "Pilot Compost Facility" located on-site; it fails to identify areas of

1    soil erosion at the Facility; and it does not include adequate notes, legends, or data

2    necessary to identify the meaning of all types of lines used on the site map to outline

3    certain features, as required by Section A(4) of the Storm Water Permit.

4         151. Waterkeeper is informed and believes, and thereon alleges, that the West

5    Valley Facility SWPPP does not include a list of significant materials handled and stored

6    at the site, or additional information related to significant materials, including the

7    locations where each material is stored, received, shipped, and/or handled, and the typical

8    quantities and frequency of each material at the Facility, as required by Section A(5) of

9    the Storm Water Permit.

10        152. Waterkeeper is informed and believes, and thereon alleges, that the West

11   Valley Facility SWPPP does not include a narrative description of all potential pollutant

12   sources at the Facility, such as the hazardous material storage area located on-site, as

13   required by Section A(6) of the Storm Water Permit.

14        153. Waterkeeper is informed and believes, and thereon alleges, that the West

15   Valley Facility SWPPP does not include a narrative assessment of all potential pollutant

16   sources at the Facility, such as the hazardous materials storage area located on-site, as

17   required by Section A(7) of the Storm Water Permit.

18        154. Waterkeeper is informed and believes, and thereon alleges, that the West

19   Valley Facility SWPPP does not include adequate BMPs to reduce or prevent pollutants

20   in storm water discharges to levels required by the Storm Water Permit, as required by

21   Section A(8) of the Storm Water Permit.

22        155. Waterkeeper is informed and believes, and thereon alleges, that the West

23   Valley Facility SWPPP does not include a narrative description of all storm water BMPs

24   implemented at the Facility, including BMPs to reduce or prevent pollutants from the

25   hazardous materials storage areas located on-site, as required by Section A(8) of the

26   Storm Water Permit.

27        156. Waterkeeper is informed and believes, and thereon alleges, that, despite

28   acknowledging the need for SWPPP revisions in their Annual Reports, the West Valley

Complaint                                    25

1  Facility Owners and/or Operators have failed and continue to fail to revise the Facility

2  SWPPP to achieve compliance with the Storm Water Permit, as required by Sections

3  A(9) and A(10) of the Storm Water Permit.

4      **G.    Defendants' Failure to Comply with the Storm Water Permit's**
           **Monitoring and Sampling Requirements.**
5

6      157.  Waterkeeper is informed and believes, and thereon alleges, that the West

7  Valley Facility Owners and/or Operators have failed and continue to fail to utilize

8  detection limits that are below EPA Benchmarks and CTR standards that will indicate

9  whether a discharge is actually in compliance with the Storm Water Permit, resulting in

10 erroneous "non-detect" results reported in the Facility's Annual Reports when pollutant

11 concentration levels in Facility samples are actually in excess of allowable limits.

12     158.  Waterkeeper is informed and believes, and thereon alleges, that the West

13 Valley Facility Owners and/or Operators have failed and continue to fail to conduct

14 quarterly visual observations of authorized non-storm water discharges, as required by

15 Section B(3) of the Storm Water Permit.

16     159.  Waterkeeper is informed and believes, and thereon alleges, that the West

17 Valley Facility Owners and/or Operators have failed and continue to fail to conduct

18 quarterly visual observations of unauthorized non-storm water discharges, as required by

19 Section B(3) of the Storm Water Permit.

20     160.  Waterkeeper is informed and believes, and thereon alleges, that the West

21 Valley Facility Owners and/or Operators have failed and continue to fail to adequately

22 document and report observations of non-storm water discharges, including by failing to

23 document the presence of any floating or suspended material, O&G, discolorations,

24 turbidity, odor, or the source of any pollutants, as required by Section B(3) of the Storm

25 Water Permit.

26     161.  Waterkeeper is informed and believes, and thereon alleges, that the West

27 Valley Facility Owners and/or Operators have failed and continue to fail to conduct

28 monthly visual observations of storm water discharges during the Wet Season from all

1  discharge points and during the first hour of discharge, as required by Section B(4)(a) of

2  the Storm Water Permit.

3      162.  Waterkeeper is informed and believes, and thereon alleges, that the West

4  Valley Facility Owners and/or Operators have failed and continue to fail to document and

5  report visual observations of storm water discharges, including by failing to document the

6  presence of any floating or suspended material, O&G, discolorations, turbidity, odor, or

7  the source of any pollutants; the location where the observation took place; and the time

8  of the observations, as required by Section B(4) of the Storm Water Permit.

9      163.  Waterkeeper is informed and believes, and thereon alleges, that the West

10  Valley Facility Owners and/or Operators have failed and continue to fail to collect storm

11  water samples from all discharge locations at the Facility, in violation of Section B(5)(a)

12  of the Storm Water Permit.

13      164.  Waterkeeper is informed and believes, and thereon alleges, that storm water

14  samples analyzed by the West Valley Facility Owners and/or Operators were not

15  collected during the first hour of discharge, as required by Section B(5)(a) of the Storm

16  Water Permit.

17      165.  Waterkeeper is informed and believes, and thereon alleges, that the West

18  Valley Facility Owners and/or Operators have failed and continue to fail to analyze all

19  storm water samples collected for O&G, ammonia, magnesium, COD, arsenic, cadmium,

20  cyanide, lead, mercury, selenium, silver, aluminum, and copper, and for all pollutants

21  likely to be present in storm water discharges significant quantities, including pathogens

22  such as *E. Coli* and coliform bacteria, as required by Section B(5)(c) and Table D of the

23  Storm Water Permit.

24      **H.   Defendants' Failure to Comply with the Storm Water Permit's**
25           **Reporting Requirements.**

26      166.  Waterkeeper is informed and believes, and thereon alleges, that the West

27  Valley Facility Owners and/or Operators have failed and continue to fail to submit

28  Annual Reports that comply with Section B(14) of the Storm Water Permit.

167. Waterkeeper is informed and believes, and thereon alleges, that the West Valley Facility Owners and/or Operators have failed and continue to fail to submit Annual Reports signed by a duly authorized representative, as required by Sections B(14), C(9), and C(10) of the Storm Water Permit.

168. Waterkeeper is informed and believes, and thereon alleges, that the West Valley Facility Owners' and/or Operators' certifications of compliance with the Storm Water Permit in the Facility's Annual Reports are erroneous because the Facility Owners and/or Operators have not revised the Facility site map, SWPPP, and/or BMPs to achieve compliance with the Storm Water Permit, as required by Sections A(9) and A(10) of the Storm Water Permit.

169. Waterkeeper is informed and believes, and thereon alleges, that the West Valley Facility Owners' and/or Operators' certifications of compliance with the Storm Water Permit in the Facility's Annual Reports are erroneous because the Facility Owners and/or Operators have not submitted complete ACSCE Reports, as required by Sections A(9) and B(14) of the Storm Water Permit.

170. Waterkeeper is informed and believes, and thereon alleges, that the West Valley Facility Owners' and/or Operators' certifications of compliance with the Storm Water Permit in the Facility's Annual Reports are erroneous because the Facility Owners and/or Operators have certified compliance with the Storm Water Permit in the same Annual Reports in which they acknowledge instances of noncompliance.

171. Waterkeeper is informed and believes, and thereon alleges, that the West Valley Facility Owners and/or Operators have failed and continue to fail to include a summary or evaluation of their visual observations and sampling and analysis results in the Facility's Annual Reports, as required by Section B(14) of the Storm Water Permit.

172. Waterkeeper is informed and believes, and thereon alleges, that the West Valley Facility Owners and/or Operators have failed and continue to fail to report in the Facility's Annual Reports all instances of noncompliance with the Storm Water Permit, the actual and anticipated periods of noncompliance, and steps taken or planned to

1 | prevent recurrence of instances of noncompliance, as required by Section C(11) of the

2 | Storm Water Permit.

3 |     173.  Waterkeeper is informed and believes, and thereon alleges, that the West

4 | Valley Facility Owners and/or Operators have failed and continue to fail to submit

5 | written reports to the Regional Board identifying additional BMPs to be implemented at

6 | the Facility following the Facility's violations of the Storm Water Permit's Receiving

7 | Water Limitations, as required by Receiving Water Limitations C(3) and C(4) of the

8 | Storm Water Permit.

9 | **VI.**   **CLAIMS FOR RELIEF**

10 | **FIRST CAUSE OF ACTION**

11 | **Defendants' Discharges of Contaminated Storm Water in Violation of the Storm Water Permit's Effluent Limitation B(3) and the Clean Water Act.**

12 | **33 U.S.C. §§ 1311(a), 1342, 1365(a) and 1365(f)**

13 |

14 |     174.  Waterkeeper incorporates the allegations contained in the above paragraphs

15 | as though fully set forth herein.

16 |     175.  Waterkeeper is informed and believes, and thereon alleges, that storm water

17 | containing levels of pollutants that does not achieve compliance with BAT/BCT

18 | standards has discharged and continues to discharge from the West Valley Facility.

19 |     176.  Waterkeeper is informed and believes, and thereon alleges, that discharges

20 | of storm water containing levels of pollutants that do not achieve compliance with

21 | BAT/BCT standards from the West Valley Facility occur during every storm water

22 | discharge from the West Valley Facility.

23 |     177.  The West Valley Facility Owners and/or Operators violate Effluent

24 | Limitation B(3) of the Storm Water Permit each and every time storm water containing

25 | levels of pollutants that do not achieve BAT/BCT standards discharges from the West

26 | Valley Facility.

27 |     178.  Waterkeeper is informed and believes, and thereon alleges, that the West

28 | Valley Facility Owners' and/or Operators' violations of Effluent Limitation B(3) of the

Complaint        29

1 | Storm Water Permit and the CWA are ongoing and continuous.

2 |      179.  The West Valley Facility Owners and/or Operators will continue to be in
3 | violation of the Storm Water Permit and the CWA each and every time contaminated
4 | storm water discharges from the West Valley Facility in violation of Effluent Limitation
5 | B(3) of the Storm Water Permit.

6 |      180.  Each and every time the West Valley Facility Owners and/or Operators
7 | discharge contaminated storm water from the West Valley Facility in violation of
8 | Effluent Limitation B(3) of the Storm Water Permit is a separate and distinct violation of
9 | section 301(a) of the CWA, 33 U.S.C. § 1311(a).

10 |      181.  By committing the acts and omissions alleged above, the West Valley
11 | Facility Owners and/or Operators are subject to an assessment of civil penalties for each
12 | and every violation of the CWA occurring from 18 October 2008 to the present pursuant
13 | to sections 309(d) and 505 of the CWA, 33 U.S.C. §§ 1319(d), 1365, and 40 C.F.R. §
14 | 19.4.

15 |      182.  An action for injunctive relief under the CWA is authorized by 33 U.S.C.
16 | § 1365(a). Continuing commission of the acts and omissions alleged above would
17 | irreparably harm Plaintiffs and the citizens of the State of California, for which harm
18 | Waterkeeper has no plain, speedy, or adequate remedy at law.

19 |      WHEREFORE, Plaintiffs pray for judgment against Defendants as set forth
20 | hereafter.

## SECOND CAUSE OF ACTION

**Defendants' Discharges of Contaminated Storm Water in Violation of Storm
Water Permit Receiving Water Limitation C(1) and the Clean Water Act.**

**33 U.S.C. §§ 1311(a), 1342, 1365(a) and 1365(f)**

25 |      183.  Waterkeeper incorporates the allegations contained in the above paragraphs
26 | as though fully set forth herein.

27 |      184.  Waterkeeper is informed and believes, and thereon alleges, that storm water
28 | containing levels of pollutants that adversely impact human health and/or the

1  environment has discharged and continues to discharge from the West Valley Facility.

2  185.  The West Valley Facility Owners and/or Operators violate Receiving Water

3  Limitation C(1) of the Storm Water Permit each and every time storm water containing

4  levels of pollutants that adversely impact human health and/or the environment

5  discharges from the West Valley Facility.

6  186.  Waterkeeper is informed and believes, and thereon alleges, that the West

7  Valley Facility Owners' and/or Operators' violations of Receiving Water Limitation C(1)

8  of the Storm Water Permit and the CWA from the West Valley Facility are ongoing.

9  187.  The West Valley Facility Owners and/or Operators will continue to be in

10  violation of the Storm Water Permit and the CWA each and every time contaminated

11  storm water discharges from the West Valley Facility in violation of Receiving Water

12  Limitation C(1) of the Storm Water Permit.

13  188.  Each and every violation of Receiving Water Limitation C(1) of the Storm

14  Water Permit is a separate and distinct violation of section 301(a) of the CWA, 33 U.S.C.

15  § 1311(a).

16  189.  By committing the acts and omissions alleged above, the West Valley

17  Facility Owners and/or Operators are subject to an assessment of civil penalties for each

18  and every violation of the CWA occurring from 18 October 2008 to the present pursuant

19  to sections 309(d) and 505 of the CWA, 33 U.S.C. §§ 1319(d), 1365, and 40 C.F.R. §

20  19.4.

21  190.  An action for injunctive relief under the CWA is authorized by 33 U.S.C.

22  § 1365(a). Continuing commission of the acts and omissions alleged above would

23  irreparably harm Plaintiffs and the citizens of the State of California, for which harm

24  Waterkeeper has no plain, speedy, or adequate remedy at law.

25  WHEREFORE, Plaintiffs pray for judgment against Defendants as set forth

26  hereafter.

27  //

28  //

Complaint                                     31

## THIRD CAUSE OF ACTION

**Defendants' Discharges of Contaminated Storm Water in Violation of Storm Water Permit Receiving Water Limitation C(2) and the Clean Water Act.**

### 33 U.S.C. §§ 1311(a), 1342, 1365(a) and 1365(f)

191.   Waterkeeper incorporates the allegations contained in the above paragraph as though fully set forth herein.

192.   Waterkeeper is informed and believes, and thereon alleges, that storm water containing levels of pollutants that cause or contribute to exceedances of water quality standards has discharged and continues to discharge from the West Valley Facility.

193.   Waterkeeper is informed and believes, and thereon alleges, that discharges of storm water containing levels of pollutants that cause or contribute to exceedances of water quality standards from the West Valley Facility occur during every storm water discharge from the West Valley Facility.

194.   The West Valley Facility Owners and/or Operators violate Receiving Water Limitation C(2) of the Storm Water Permit each and every time storm water containing levels of pollutants that cause or contribute to exceedances of water quality standards discharges from the West Valley Facility.

195.   Waterkeeper is informed and believes, and thereon alleges, that the West Valley Facility Owners' and/or Operators' violations of Receiving Water Limitation C(2) of the Storm Water Permit and the CWA from the West Valley Facility are ongoing.

196.   The West Valley Facility Owners and/or Operators will continue to be in violation of the Storm Water Permit and the CWA each and every time contaminated storm water discharges from the West Valley Facility in violation of Receiving Water Limitation C(2) of the Storm Water Permit.

197.   Each and every violation of Receiving Water Limitation C(2) of the Storm Water Permit is a separate and distinct violation of section 301(a) of the CWA, 33 U.S.C. § 1311(a).

198.   By committing the acts and omissions alleged above, the West Valley Facility Owners and/or Operators are subject to an assessment of civil penalties for each and every violation of the CWA occurring from 18 October 2008 to the present pursuant to sections 309(d) and 505 of the CWA, 33 U.S.C. §§ 1319(d), 1365, and 40 C.F.R. § 19.4.

199.   An action for injunctive relief under the CWA is authorized by 33 U.S.C. § 1365(a). Continuing commission of the acts and omissions alleged above would irreparably harm Plaintiffs and the citizens of the State of California, for which harm Waterkeeper has no plain, speedy, or adequate remedy at law.

WHEREFORE, Plaintiffs pray for judgment against Defendants as set forth hereafter.

## FOURTH CAUSE OF ACTION

### Defendants' Discharges of Non-Storm Water in Violation of the Storm Water Permit's Discharge Prohibition A(1) and the Clean Water Act.

### 33 U.S.C. §§ 1311(a), 1342, 1365(a) and 1365(f)

200.   Waterkeeper incorporates the allegations contained in the above paragraphs as though fully set forth herein.

201.   Waterkeeper is informed and believes, and thereon alleges, that prohibited non-storm water has discharged and continues to discharge from the West Valley Facility in violation of Discharge Prohibition A(1) of the Storm Water Permit each time water used for dust control, washing, and cleaning is not prevented from discharging from the West Valley Facility or is discharged without a separate NPDES permit.

202.   Waterkeeper is informed and believe, and thereon alleges, that the West Valley Facility Owners' and/or Operators' violations of Discharge Prohibition A(1) are ongoing and continuous.

203.   The West Valley Facility Owners and/or Operators will continue to be in violation of the Storm Water Permit and the Clean Water Act each and every time non-storm water discharges from the West Valley Facility in violation of Discharge

1  Prohibition (A)(1) of the Storm Water Permit.

2      204.   Each and every violation of Discharge Prohibition A(1) of the Storm Water

3  Permit is a separate and distinct violation of section 301(a) of the CWA, 33 U.S.C.

4  § 1311(a).

5      205.   By committing the acts and omissions alleged above, the West Valley

6  Facility Owners and/or Operators are subject to an assessment of civil penalties for each

7  and every violation of the CWA occurring from 18 October 2008 to the present, pursuant

8  to sections 309(d) and 505 of the CWA, 33 U.S.C. §§ 1319(d), 1365, and 40 C.F.R. §

9  19.4.

10      206.   An action for injunctive relief under the CWA is authorized by 33 U.S.C.

11  § 1365(a). Continuing commission of the acts and omissions alleged above would

12  irreparably harm Plaintiffs and the citizens of the State of California, for which harm

13  Waterkeeper has no plain, speedy, or adequate remedy at law.

14      WHEREFORE, Plaintiffs pray for judgment against Defendants as set forth

15  hereafter.

16  ## FIFTH CAUSE OF ACTION

17  **Defendants' Failure to Adequately Develop, Implement, and/or Revise a Storm
18  Water Pollution Prevention Plan in Violation of the Storm Water Permit Section A
    and Provision E(2) and Clean Water Act.**
19
    **33 U.S.C. §§ 1311(a), 1342, 1365(a) and 1365(f)**
20

21      207.   Waterkeeper incorporates the allegations contained in the above paragraphs

22  as though fully set forth herein.

23      208.   Waterkeeper is informed and believes, and thereon alleges, that the West

24  Valley Facility Owners and/or Operators have failed and continue to fail to adequately

25  develop a SWPPP for the West Valley Facility, in violation of Section A and Provision

26  E(2) of the Storm Water Permit.

27      209.   Waterkeeper is informed and believes, and thereon alleges, that the West

28  Valley Facility Owners and/or Operators have failed and continue to fail to adequately

1    implement a SWPPP for the West Valley Facility, in violation of Section A and Provision
2    E(2) of the Storm Water Permit.

3        210.  Waterkeeper is informed and believes, and thereon alleges, that the West
4    Valley Facility Owners and/or Operators have failed and continue to fail to adequately
5    revise a SWPPP for the West Valley Facility, in violation of Sections A(9) and A(10) of
6    the Storm Water Permit.

7        211.  The West Valley Facility Owners and/or Operators have been in violation of
8    Section A and Provision E(2) of the Storm Water Permit at the West Valley Facility
9    every day from 18 October 2008 to the present.

10       212.  The West Valley Facility Owners' and/or Operators' violations of Section A
11   and Provision E(2) of the Storm Water Permit and the CWA at the West Valley Facility
12   are ongoing and continuous.

13       213.  The West Valley Facility Owners and/or Operators will continue to be in
14   violation of Section A and Provision E(2) of the Storm Water Permit and the CWA each
15   and every day the West Valley Facility Owners and/or Operators fail to adequately
16   develop, implement, and/or revise the SWPPP for the West Valley Facility.

17       214.  Each and every violation of the Storm Water Permit's SWPPP requirements
18   at the West Valley Facility is a separate and distinct violation of the CWA.

19       215.  By committing the acts and omissions alleged above, the West Valley
20   Facility Owners and/or Operators are subject to an assessment of civil penalties for each
21   and every violation of the CWA occurring from 18 October 2008 to the present, pursuant
22   to sections 309(d) and 505 of the CWA, 33 U.S.C. §§ 1319(d), 1365, and 40 C.F.R. §
23   19.4.

24       216.  An action for injunctive relief under the CWA is authorized by 33 U.S.C.
25   § 1365(a). Continuing commission of the acts and omissions alleged above would
26   irreparably harm Waterkeeper and the citizens of the State of California, for which harm
27   Waterkeeper has no plain, speedy, or adequate remedy at law.

28       WHEREFORE, Plaintiffs pray for judgment against the Defendants as set forth

Complaint                        35

1  hereafter.

2  ## SIXTH CAUSE OF ACTION

3
4  **Defendants' Failure to Adequately Develop, Implement, and/or Revise a Monitoring and Reporting Program in Violation of the Storm Water Permit and the Clean Water Act.**

5
6  **33 U.S.C. §§ 1311(a), 1342, 1365(a) and 1365(f)**

7        217.   Waterkeeper incorporates the allegations contained in the above paragraphs
8  as though fully set forth herein.

9        218.   Waterkeeper is informed and believes, and thereon alleges, that the West
10 Valley Facility Owners and/or Operators have failed and continue to fail to adequately
11 develop an M&RP for the West Valley Facility in violation of Section B and Provision
12 E(3) of the Storm Water Permit.

13       219.   Waterkeeper is informed and believes, and thereon alleges, that the West
14 Valley Facility Owners and/or Operators have failed and continue to fail to adequately
15 implement an M&RP for the West Valley Facility in violation of Section B and Provision
16 E(3) of the Storm Water Permit.

17       220.   Waterkeeper is informed and believes, and thereon alleges, that the West
18 Valley Facility Owners and/or Operators have failed and continue to fail to adequately
19 revise an M&RP for the West Valley Facility in violation of Section B and Provision
20 E(3) of the Storm Water Permit.

21       221.   The West Valley Facility Owners and/or Operators have been in violation of
22 Section B and Provision E(3) of the Storm Water Permit at the West Valley Facility
23 every day from 18 October 2008 to the present.

24       222.   The West Valley Facility Owners' and/or Operators' violations of Section B
25 and Provision E(3) of the Storm Water Permit and the CWA at the West Valley Facility
26 are ongoing and continuous.

27       223.   The West Valley Facility Owners and/or Operators will continue to be in
28 violation of Section B and Provision E(3) the Storm Water Permit and the CWA each and

1  every day they fail to adequately develop, implement, and/or revise an M&RP for the

2  West Valley Facility.

3      224.   Each and every violation of the Storm Water Permit's M&RP requirements

4  at the West Valley Facility is a separate and distinct violation of the CWA.

5      225.   By committing the acts and omissions alleged above, the West Valley

6  Facility Owners and/or Operators are subject to an assessment of civil penalties for each

7  and every violation of the CWA occurring from 18 October 2008 to the present pursuant

8  to sections 309(d) and 505 of the CWA, 33 U.S.C. §§ 1319(d), 1365, and 40 C.F.R. §

9  19.4.

10      226.   An action for injunctive relief under the CWA is authorized by 33 U.S.C.

11  § 1365(a). Continuing commission of the acts and omissions alleged above would

12  irreparably harm Waterkeeper and the citizens of the State of California, for which harm

13  Waterkeeper has no plain, speedy, or adequate remedy at law.

14      WHEREFORE, Plaintiffs pray judgment against the Defendants as set forth

15  hereafter.

### SEVENTH CAUSE OF ACTION

**Defendants' Failure to Report as Required by the Storm Water Permit in
Violation of the Storm Water Permit and the Clean Water Act.**

**33 U.S.C. §§ 1311(a), 1342, 1365(a) and 1365(f)**

20      227.   Waterkeeper incorporates the allegations contained in the above paragraphs

21  as though fully set forth herein.

22      228.   Waterkeeper is informed and believes, and thereon alleges, that the West

23  Valley Facility Owners and/or Operators have failed and continue to fail to submit

24  accurate Annual Reports to the Regional Board in violation of Sections B(14), C(9),

25  C(10), and C(11) of the Storm Water Permit.

26      229.   Waterkeeper is informed and believes, and thereon alleges, that the West

27  Valley Facility Owners and/or Operators have failed and continue to fail to submit

28  complete Annual Reports to the Regional Board in violation of Sections B(14), C(9),

1  C(10), and C(11) of the Storm Water Permit.

2       230.   The West Valley Facility Owners' and/or Operators' violations of the

3  reporting requirements of the Storm Water Permit and the CWA are ongoing and

4  continuous.

5       231.   The West Valley Facility Owners and/or Operators have been in violation of

6  Sections B(14), C(9), C(10), and C(11) of the Storm Water Permit and CWA every day

7  since at least 18 October 2008.

8       232.   By committing the acts and omissions alleged above, the West Valley

9  Facility Owners and/or Operators are subject to an assessment of civil penalties for each

10  and every violation of the CWA occurring from 18 October 2008 to the present, pursuant

11  to sections 309(d) and 505 of the CWA, 33 U.S.C. §§ 1319(d), 1365, and 40 C.F.R. §

12  19.4.

13       233.   An action for injunctive relief under the CWA is authorized by 33 U.S.C.

14  § 1365(a). Continuing commission of the acts and omissions alleged above would

15  irreparably harm Waterkeeper and the citizens of the State of California, for which harm

16  Waterkeeper has no plain, speedy, or adequate remedy at law.

17       WHEREFORE, Plaintiffs pray judgment against the Defendants as set forth

18  hereafter.

19  **VII.   RELIEF REQUESTED**

20       234.   Plaintiffs respectfully request that this Court grant the following relief:

21       a.   A Court order declaring Defendants to have violated and to be in violation

22  of the Storm Water Permit and Section 301(a) of the CWA, 33 U.S.C. § 1311(a), for their

23  discharges of pollutants not in compliance with the Storm Water Permit and violations of

24  the substantive and procedural requirements of the Storm Water Permit;

25       b.   A Court order enjoining Defendants from violating the substantive and

26  procedural requirements of the Storm Water Permit and the Clean Water Act;

27       c.   A Court order enjoining Defendants from discharging pollutants not in

28  compliance with an NPDES permit;

1        d.     A Court order assessing civil monetary penalties for each violation of the

2  CWA at $32,500 per day per violation for violations occurring from 18 October 2008

3  through 12 January 2009, as permitted by 33 U.S.C. § 1319(d) and 40 C.F.R. § 19.4;

4        e.     A Court order assessing civil monetary penalties for each violation of the

5  CWA at $37,500 per day per violation for violations occurring since 12 January 2009, as

6  permitted by 33 U.S.C. § 1319(d) and 40 C.F.R. § 19.4;

7        f.     A Court order awarding Plaintiffs their reasonable costs of suit, including

8  attorney, witness, expert, and consultant fees, as permitted by section 505(d) of the Clean

9  Water Act, 33 U.S.C. § 1365(d); and

10        g.     Any other relief as this Court may deem appropriate.

11

12  Dated: December 18, 2013            Respectfully submitted,

13                             LAWYERS FOR CLEAN WATER, INC.

14

15

16                             Daniel Cooper

17                             Attorney for Plaintiffs

18                             Inland Empire Waterkeeper and Orange
County Coastkeeper

19

20

21

22

23

24

25

26

27

28



## Inland Empire Waterkeeper
*Advocacy • Education • Restoration • Enforcement*

6876 Indiana Avenue, Suite D
Riverside, CA 92506
Phone (951) 530-8823
Fax (951) 530-8824
Website www.iewaterkeeper.org

October 8, 2013

**VIA CERTIFIED MAIL**

Burrtec Waste Group, Inc.
9890 Cherry Avenue
Fontana, California 92335

Burrtec Waste Industries, Inc.
9890 Cherry Avenue
Fontana, California 92335

West Valley Recycling and Transfer, Inc.
9890 Cherry Avenue
Fontana, California 92335

West Valley MRF, LLC
Attention: Managing Agent
13373 Napa Street
Fontana, California 92335

**VIA U.S MAIL**

Cole Burr
Registered Agent
Burrtec Waste Group, Inc.
9890 Cherry Avenue
Fontana, California 92335

Cole Burr
Registered Agent
Burrtec Waste Industries, Inc.
9890 Cherry Avenue
Fontana, California 92335

Cole Burr
Registered Agent
West Valley Recycling and Transfer, Inc.
9890 Cherry Avenue
Fontana, California 92335

Cole Burr
Registered Agent
West Valley Mrf, LLC
9890 Cherry Avenue
Fontana, California 92335

**Re:    Notice of Violation and Intent to File Suit Under the Clean Water Act**

To Whom It May Concern:

      I am writing on behalf of Inland Empire Waterkeeper and Orange County Coastkeeper (collectively "Waterkeeper") in regard to violations of the Clean Water Act[1] and California's Storm Water Permit[2] occurring at: 13373 Napa Street, Fontana, California 92335 ("West Valley Facility" or "Facility"). This letter is being sent to you as the responsible owners and/or operators of the West Valley Facility, or as the registered agent for those entities. This letter puts Burrtec Waste Group, Inc., Burrtec Waste Industries, Inc., West Valley Recycling and Transfer, Inc., and West Valley MRF, LLC, (hereinafter referred to as the "West Valley Owners and/or Operators")

---

[1] Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 *et seq.*
[2] National Pollution Discharge Elimination System ("NPDES") General Permit No. CAS000001 [State Water Resources Control Board] Water Quality Order No. 92-12-DWQ, as amended by Order No. 97-03-DWQ.

Notice of Violation and Intent to File Suit
October 8, 2013
Page 2 of 19

on notice of the violations of the Storm Water Permit occurring at the West Valley Facility. These violations include, but are not limited to, discharges of polluted storm water from the West Valley Facility into local surface waters. Violations of the Storm Water Permit are violations of the Clean Water Act. As explained below, the West Valley Facility Owners and/or Operators are liable for violations of the Storm Water Permit and the Clean Water Act.

Section 505(b) of the Clean Water Act, 33 U.S.C. § 1365(b), requires that a citizen give notice of his/her intention to file suit sixty (60) days prior to the initiation of a civil action under Section 505(a) of the Clean Water Act, 33 U.S.C. § 1365(a). Notice must be given to the alleged violator, the Administrator of the United States Environmental Protection Agency ("EPA"), the Regional Administrator of the EPA, the Executive Officer of the water pollution control agency in the State in which the violations occur, and, if the alleged violator is a corporation, the registered agent of the corporation. *See* 40 C.F.R. § 135.2(a)(1).

By this letter issued pursuant to 33 U.S.C. §§ 1365(a) and (b) of the Clean Water Act, (hereinafter "Notice Letter"), Waterkeeper puts the West Valley Owners and/or Operators on notice that, after the expiration of sixty (60) days from the date of this Notice Letter, Waterkeeper intends to file an enforcement action in Federal court against them for violations of the Storm Water Permit and the Clean Water Act.

I.      **BACKGROUND**

  A.  **Inland Empire Waterkeeper and Orange County Coastkeeper**

Inland Empire Waterkeeper's office is located at 6876 Indiana Avenue, Suite D, Riverside, California 92506. Inland Empire Waterkeeper is a chapter of Orange County Coastkeeper. Orange County Coastkeeper is a non-profit public benefit corporation organized under the laws of the State of California with its office at 3151 Airway Avenue, Suite F-110, Costa Mesa, California 92626. Together, Inland Empire Waterkeeper and Orange County Coastkeeper have over 2,000 members who live and/or recreate in and around San Bernardino County and the Santa Ana River watershed. Inland Empire Waterkeeper and Orange County Coastkeeper are dedicated to the preservation, protection, and defense of the environment, wildlife, and natural resources of their local watersheds, including the Santa Ana River and its tributaries. To further these goals, Waterkeeper actively seeks federal and state agency implementation of the Clean Water Act, and, where necessary, directly initiates enforcement actions on behalf of itself and its members.

Members of Waterkeeper use and enjoy the waters into which the West Valley Facility discharges, including the Santa Ana River and its tributaries. Members of Waterkeeper use and enjoy the Santa Ana River and its tributaries to picnic, hike, view wildlife, and engage in scientific study including, monitoring activities, among other activities. Procedural and substantive violations, including, but not limited to, the discharge of pollutants from the West Valley Facility, impairs each of these uses. Further, these violations are ongoing and continuous. Thus, the interests of Waterkeeper's members have been, are being, and will continue to be

Notice of Violation and Intent to File Suit
October 8, 2013
Page 3 of 19

adversely affected by the West Valley Facility owners' and/or operators' failure to comply with
the Clean Water Act and the Storm Water Permit.

## B.  The Owners and/or Operators of the West Valley Facility

Prior to beginning industrial operations, dischargers are required to apply for coverage
under the Storm Water Permit by submitting a Notice of Intent ("NOI") to the State Water
Resources Control Board ("State Board") to obtain Storm Water Permit coverage. *See* Storm
Water Permit, Finding #3. Waterkeeper obtained 2 NOIs for the Facility. One NOI is signed by
Eric Herbert, who is identified as the Vice-President, and is dated February 4, 1998. This NOI
identifies the operator of the West Valley Facility as "West Valley Mrf LLC," and the Facility
name and location as "West Valley Mrf LLC, 13373 Napa St., Fontana." A second NOI is
unsigned and dated July 6, 2012, and identifies the Facility operator and location as "West
Valley Mrf LLC, 13373 Napa St., Fontana," and the Facility's Waste Discharge Identification
("WDID") number as 8-36I013750.

Information available to Waterkeeper indicates that West Valley Mrf, LLC is an owner
and/or operator of the West Valley Facility. Information available to Waterkeeper indicates that
West Valley Recycling & Transfer Inc. is an owner and/or operator of the West Valley Facility.
Information available to Waterkeeper indicates that Burrtec Waste Industries, Inc. is an owner
and/or operator of the West Valley Facility. Finally, information available to Waterkeeper
indicates that Burrtec Waste Group, Inc. is an owner and/or operator of the West Valley Facility.

Burrtec Waste Group, Inc., Burrtec Waste Industries, Inc., and West Valley Recycling
and Transfer Inc. are active corporations registered in California. West Valley Mrf LLC is an
active limited liability company registered in California. The Registered Agent for Burrtec Waste
Group, Inc., Burrtec Waste Industries, Inc., West Valley Recycling and Transfer Inc., and West
Valley Mrf LLC is: Cole Burr, 9890 Cherry Avenue, Fontana, California 92335.

The West Valley Facility Owners and/or Operators have violated and continue to violate
the procedural and substantive terms of the Storm Water Permit, including but not limited to the
illegal discharge of pollutants from the West Valley Facility into local surface waters. As
explained herein, the West Valley Facility Owners and/or Operators are liable for violations of
the Storm Water Permit and the Clean Water Act.

## C.  Storm Water Pollution and the Waters Receiving West Valley Facility's Discharges

With every significant rainfall event, millions of gallons of polluted storm water
originating from industrial operations such as the West Valley Facility pour into storm drains and
local waterways. The consensus among agencies and water quality specialists is that storm water
pollution accounts for more than half of the total pollution entering surface waters each year.
Such discharges of pollutants from industrial facilities contribute to the impairment of
downstream waters and adversely impact aquatic-dependent wildlife. These contaminated
discharges can and must be controlled for downstream ecosystems to regain their health.

Notice of Violation and Intent to File Suit
October 8, 2013
Page 4 of 19

Storm water discharges from waste transfer and recycling facilities like the West Valley Facility contain pollutants such as: oil and grease ("O&G"); hydraulic fluids; transmission fluid; antifreeze; total suspended solids ("TSS"); heavy metals (such as copper, iron, lead, aluminum, and zinc); pathogens; nutrients; solvents; cleaning detergents; and pesticides. Many of these pollutants are on the list of chemicals published by the State of California as known to cause cancer, birth defects, and/or developmental or reproductive harm. Discharges of polluted storm water to the Santa Ana River and its tributaries pose carcinogenic and reproductive toxicity threats to the public and adversely affect the aquatic environment.

The West Valley Facility discharges into the San Sevaine Channel,[3] which is a tributary to the Santa Ana River (hereinafter collectively "Receiving Waters"). The Santa Ana River is an ecologically sensitive area. Although pollution and habitat destruction have drastically diminished once-abundant and varied fisheries, the Receiving Waters still provide essential habitat for dozens of fish, bird, and invertebrate species. Polluted discharges form the Facility harm the special aesthetic and recreational significance that the Receiving Waters have for people in the surrounding communities, including Waterkeeper's members. The public's use of the Receiving Waters for water contact sports exposes people to toxic metals and other contaminants in storm water and non-storm water discharges. Non-contact recreational and aesthetic opportunities, such as wildlife observation, are also impaired by polluted discharges to the Receiving Waters.

The California Regional Water Quality Control Board, Santa Ana Region Regional Board ("Regional Board") issued the *Santa Ana River Basin Water Quality Control Plan* ("Basin Plan"). The Basin Plan identifies the "Beneficial Uses" of water bodies in the region. The Beneficial Uses for the Santa Ana River near or downstream of the point at which it receives polluted storm water discharges from the West Valley Facility by way of the San Sevaine Channel (i.e., Santa Ana River Reaches 1 – 3) include: Agricultural Supply; Groundwater Recharge; Water Contact Recreation; Non-contact Water Recreation; Warm Freshwater Habitat; Wildlife Habitat; and Rare, Threatened or Endangered Species. *See* Basin Plan at Table 3-1. According to the 2010 303(d) List of Impaired Water Bodies, Reach 3 of the Santa Ana River, into which the San Sevaine Channel drains, is impaired for copper, lead, and pathogens, and Reach 2 of the Santa Ana River is impaired for indicator bacteria.[4] Polluted discharges from industrial sites such as the West Valley Facility contribute to the degradation of these already impaired surface waters and of the ecosystems that depend on these waters.

## II.     THE WEST VALLEY FACILITY AND ASSOCIATED DISCHARGES OF POLLUTANTS

### A.  <u>West Valley Facility Site Description</u>

---

[3] The West Valley Owners and/or Operators list San Sevaine Creek as the receiving water on their NOI, which is the same waterbody as the San Sevaine Channel
[4] 2010 Integrated Report – All Assessed Waters, available at:
http://www.waterboards.ca.gov/water_issues/programs/tmdl/integrated2010.shtml, (last accessed on July 8, 2013).

Notice of Violation and Intent to File Suit
October 8, 2013
Page 5 of 19

The West Valley Facility Storm Water Pollution Prevention Plan ("SWPPP") and NOI state that the West Valley Facility is 29.2 acres in size, 42% of which is impervious.[5] The SWPPP also states that the Materials Recovery Facility ("MRF")/Transfer Station building is the main building on site. Within this building the MRF is located adjacent to and north of the transfer station. This building also includes a buy-back center, a mixed waste processing area for select commercial loads with high recyclable content, and administrative offices. The transfer tunnel is located on the south side below the tipping floor of the MRF/Transfer Station building. A hazardous waste storage area is located at the building's southwest corner. The exterior of the building has a loading dock on the east side with employee parking to the north. The vehicle maintenance building and fueling station are located to the east of the MRF/Transfer Station building. Two scale houses and scales facilities are located on site along with a tarping station. Green waste processing areas are located in the northwest corner of the site and to south of the MRF/Transfer Station building. West of the main truck access there is an area for processing construction, demolition, and inert materials. Additional employee parking is located southeast of the green waste area. Information available to Waterkeeper indicates that after the SWPPP was written, the Facility expanded to include a 100-ton/day aerated static pile ("ASP") food and greenwaste composting facility.

### B.  West Valley Facility Industrial Activities and Associated Pollutants

The West Valley Facility SWPPP identifies the Facility as a waste recovery, transfer, and recycling station. The SWPPP states that the Facility receives municipal solid waste, source-separated materials, green and wood wastes, construction and demolition debris, and hazardous waste, all of which are sorted at the Facility. Recyclable material is removed and marketed, green and wood wastes are ground and transferred offsite for reuse, and residual wastes are removed to a landfill. The West Valley Facility Owners' and/or Operators' industrial activities are pollutant sources and include, but are not limited to: processing, loading, and unloading of solid waste and recyclable materials such as hazardous materials, green/wood waste, and construction/demolition materials; green waste grinding; storage of solid waste materials including, but not limited to, household hazardous materials; vehicle and equipment cleaning operations; vehicle and equipment refueling; vehicle and equipment maintenance; storage of materials associated with equipment and vehicle maintenance; and storage of vehicles and equipment. West Valley Facility Owners and/or Operators also store and/or generate hazardous waste fluids, such as oil, hydraulic fluid, brake fluid, and antifreeze.

The 1998 and 2012 NOIs for the Facility classify the Facility under the Standard Industrial Classification ("SIC") Codes 4212 (Local Trucking, Without Storage) and 5093 (Scrap and Waste Material Recycling). The Facility SWPPP lists the SIC Codes for the Facility as 4212, 5093, and 4953 (Hazardous Waste Treatment Storage or Disposal). Facilities classified under SIC Codes 4953 and 5093 require Storm Water Permit coverage for the entire facility. For facilities classified as SIC Code 4212, the Storm Water Permit requires permit coverage for "vehicle maintenance shops, equipment cleaning operations, or airport deicing operations." Storm Water Permit, Attachment 1. The Storm Water Permit regulates the portions of the facility

---

[5] Information available to Waterkeeper indicates that the Facility is over 33 acres.

which are used for "vehicle maintenance (including vehicle rehabilitation, mechanical repairs, painting, fueling, and lubrication) or other operations identified herein that are associated with industrial activity." Storm Water Permit, Attachment 1; *see also* Storm Water Permit, Attachment 4 (stating that "storm water associated with industrial activity" includes storm water discharges from material handling activities and storage areas for material handling equipment). Waterkeeper puts the West Valley Facility Owners and/or Operators on notice that one or more of these regulated activities is conducted at locations throughout the entire West Valley Facility, and thus the entire Facility requires Storm Water Permit coverage. In addition, even if the regulated industrial activities are not occurring throughout the entire Facility at all times, under the Storm Water Permit's definition of "storm water associated with industrial activities" and explanation of material handling activities, Waterkeeper puts the West Valley Facility Owners and/or Operators on notice that since no best management practices ("BMPs") or other controls exist to separate the storm water flows from portions of the Facility where non-regulated activities may occur from storm water flows from the regulated industrial activities, storm water at the Facility commingles and thus, all storm water discharges from the Facility are regulated under the Storm Water Permit.

The pollutants associated with operations at the West Valley Facility include, but are not limited to: O&G; hydraulic fluids; transmission fluid; antifreeze; TSS; heavy metals (such as copper, iron, lead, aluminum, and zinc); pathogens; nutrients; and fugitive and other dust, dirt, and debris. The SWPPP lists "Acids & Bases, Aromatic Hydrocarbons, Chemical Oxygen Demand, Chlorides, Chlorinated Hydrocarbons, Metals, Oil & Grease, Organic Carbons, and Sulfates" as potential pollutants.

Information available to Waterkeeper indicates that the Facility includes an uncovered loading dock, an uncovered employee parking lot, an uncovered fueling area, and an uncovered scaling facility. There is also an unpaved, uncovered area for processing construction, demolition, and other materials. Finally, an uncovered green waste processing area, and an unpaved, uncovered green waste processing area are located at the Facility. Thus, fueling, loading and unloading of waste materials, storage of waste materials, demolition and grinding of waste materials, and other industrial activities occur at the West Valley Facility without adequate cover or other BMPs to prevent storm water and non-storm water exposure to pollutant sources, and without secondary containment or other BMPs to prevent polluted water from discharging from the West Valley Facility. Further, the Facility has inadequate treatment, to reduce the levels of pollutants in storm water and non-storm water discharges as required by the Storm Water Permit. The resulting illegal discharges of polluted water impact Waterkeeper's members' use and enjoyment of the Receiving Waters by degrading the quality of the Receiving Waters and by posing risks to human health and aquatic life.

## C. West Valley Facility Storm Water Flow and Discharge Locations

The West Valley Facility SWPPP divides the Facility into six different drainage areas, Area A – Area F, and includes the following descriptions: Area A consists of 2.8 acres of dirt west of the main building; Area B consists of 2.0 paved acres to the north and west of the main building; Area C consists of 2.1 acres of pavement and landscaped slopes to the southeast of the

Notice of Violation and Intent to File Suit
October 8, 2013
Page 7 of 19

main building; Area D consists of 8.0 paved acres that include the east entry to the Facility and access ramp, the west entry ramp, and a portion of the operations ramp located to the south of the main building; Area E consists of 3.0 paved acres where green waste is processed to the south of the main building; and Area F consists of 1.6 unpaved acres near the Facility's southern boundary where "overflow equipment" is stored. The SWPPP states that there are two storm drain lines, Line A and Line B, into which all storm water on the Facility drains. Drainage Areas A, B, C and D drain to Line A; drainage areas E and F drain to Line B. Both Line A and Line B have storm water filter devices ("Vortechs Systems") through which storm water flows before it is discharged into a channel, (identified on the site map as "Existing Concrete Channel") directly to the east of the Facility. The Existing Concrete Channel empties into the San Sevaine Channel.

The Facility's 2012-2013 Annual Report indicates that the Facility has four discharge points, labeled as "DP 1 Greenwaste Drain," "DP 2 Southwest Drain (MP1)," "DP 3 Center Inlet," and "DP 4 Clarifier Test Point (MP2)." Neither the narrative portion of the SWPPP nor the site map identifies the location of these discharge points. However, based on Waterkeeper's review of the site map, the storm water discharges points at the West Valley Facility include: the point at which Line A discharges to the Existing Concrete Channel; the point at which Line B discharges to the Existing Concrete Channel; eastward storm water flow from the parking lot into the Existing Concrete Channel; westward flow of storm water from Areas A and E onto the adjacent lot; and at least five discharge points along Napa Street. The discharge points along Napa Street include two discharge points at each of the two driveways – one discharge point located at the western curb of each driveway, along which water flows to Napa Street, and one located at the eastern curb of each driveway, along which water flows to Napa Street. There are also three drain outlets to Napa Street in addition to the driveways.

## III.  VIOLATIONS OF THE CLEAN WATER ACT AND THE STORM WATER PERMIT

### A.  Discharges of Polluted Storm Water from the West Valley Facility in Violation of Effluent Limitation B(3) of the Storm Water Permit

Effluent Limitation (B)(3) of the Storm Water Permit requires dischargers to reduce or prevent pollutants associated with industrial activity in storm water discharges through implementation of BMPs that achieve best available technology economically achievable ("BAT") for toxic pollutants[6] and best conventional pollutant control technology ("BCT") for conventional pollutants.[7] EPA's Industrial Storm Water Permit contains benchmark values, which are objective standards for evaluating whether a permittee's BMPs achieve compliance with BAT/BCT, as required by Effluent Limitation B(3) of the Storm Water Permit  ("EPA Benchmarks").[8]

---

[6]  Toxic pollutants are listed at 40 C.F.R. § 401.15 and include copper, lead, and zinc, among others.

[7]  Conventional pollutants are listed at 40 C.F.R. § 401.16 and include BOD, TSS, O & G, pH, and fecal coliform.

[8]  *See United States Environmental Protection Agency (EPA) National Pollutant Discharge Elimination System (NPDES) Multi-Sector General Permit for Stormwater Discharges Associated with Industrial Activity (MSGP) Authorization to Discharge Under the National Pollutant Discharge Elimination System*, as modified effective May 27, 2009 ("Multi-Sector Permit"), Fact Sheet at 106; *see also*, 73 Federal Register 56572 (2008).

Storm water sampling at the West Valley Facility demonstrates that concentrations of pollutants in storm water discharges from the Facility exceed applicable EPA Benchmarks. Attachment A contains a table with the dates on which storm water samples reported by West Valley Facility Owners and/or Operators since the 2008-2009 Annual Report exceed an EPA Benchmark. Moreover, the Regional Board inspected the Facility in 2000, and specifically put the West Valley Facility Owners and/or Operators on notification that their BMPs were inadequate and ineffective. Despite this notice there is no evidence that the West Valley Facility Owners and/or Operators properly addressed the deficiencies or remedied the violations. Finally, the West Valley Facility Owners and/or Operators acknowledge in their 2010-2011 and 2011-2012 Annual Reports that high pollutant concentrations in the Facility's storm water discharges are ongoing and constitute violations of the Storm Water Permit. Thus, the West Valley Facility Owners and/or Operators are aware that BMPs fail to prevent the discharge of polluted storm water from the Facility, yet they continue to fail to develop and/or implement BMPs necessary to achieve compliance with the Storm Water Permit.

The repeated exceedances of EPA Benchmarks demonstrate that the West Valley Facility Owners and/or Operators have failed to develop and/or implement required BMPs at the Facility that achieve compliance with the BAT/BCT standards. Waterkeeper puts the West Valley Facility Owners and/or Operators on notice that they violate Effluent Limitation B(3) of the Storm Water Permit each time storm water discharges from the Facility without BMPs that achieve BAT/BCT, including but not limited to the dates identified in Attachment A. These violations are ongoing and will continue every time the West Valley Facility Owners and/or Operators discharges polluted storm water without developing and/or implementing BMPs that achieve compliance with the BAT/BCT standards. Waterkeeper will update the dates of violations when additional information and data become available. Each time the West Valley Facility Owners and/or Operators discharge polluted storm water in violation of Effluent Limitation B(3) of the Storm Water Permit is a separate and distinct violation of the Storm Water Permit and Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a). The West Valley Facility Owners and/or Operators are subject to civil penalties for all violations of the Clean Water Act occurring since October 8, 2008.

### B. Discharges of Polluted Storm Water from the West Valley Facility in Violation of Receiving Water Limitations C(1) and C(2) of the Storm Water Permit

Receiving Water Limitation C(1) of the Storm Water Permit prohibits storm water discharges and authorized non-storm water discharges to surface water or groundwater that adversely impact human health or the environment. Discharges that contain pollutants in concentrations that exceed levels known to adversely impact aquatic species and the environment constitute violations of Receiving Water Limitation C(1) of the Storm Water Permit and the Clean Water Act. Receiving Water Limitation C(2) of the Storm Water Permit prohibits storm water discharges and authorized non-storm water discharges that cause or contribute to an

Notice of Violation and Intent to File Suit
October 8, 2013
Page 9 of 19

exceedance of an applicable Water Quality Standard ("WQS").[9] Applicable WQS include, among others, the Criteria for Priority Toxic Pollutants in the State of California, 40 C.F.R. § 131.38 ("CTR"). The Basin Plan sets out additional WQSs, including WQSs for total coliform and fecal coliform when the Beneficial Uses of a lake or stream include Municipal and Domestic Supply, Non-contact Water Recreation, and Water Contact Recreation, such as the Receiving Waters. Discharges that contain pollutants in excess of an applicable WQS violate Receiving Water Limitation C(2) of the Storm Water Permit and the Clean Water Act.

Information available to Waterkeeper indicates that storm water discharges from the West Valley Facility contain elevated concentrations of pollutants such as copper, lead, iron, aluminum, zinc, and pathogens, including coliform bacteria and *Escherichia coli*, among others. The Receiving Waters are impaired for copper, lead, and pathogens. Information available to Waterkeeper indicates that storm water discharges from the West Valley Facility containing elevated concentrations of pollutants can be acutely toxic and/or have sub-lethal impacts on the avian and aquatic wildlife in the Receiving Waters. Information available to Waterkeeper further indicates that storm water discharges from the West Valley Facility containing elevated concentrations of pollutants cause or contribute to a violation of an applicable WQS. Attachment A contains a table with the dates on which storm water samples reported by the West Valley Facility Owners and/or Operators since the 2008-2009 Annual Report exceeded a CTR WQS. Moreover, as described in Section A above, the West Valley Facility Owners and/or Operators have been on notice since at least 2000 that their BMPs are inadequate, and by their own admission that the high levels of pollutants in the Facility's storm water discharges are violations of the Storm Water Permit.

The repeated exceedances of CTR limits demonstrate that the West Valley Facility Owners and/or Operators have violated and continue to violate Receiving Water Limitation C(1) and/or Receiving Water Limitation C(2). Waterkeeper puts West Valley Facility Owners and/or Operators on notice that they violate Receiving Water Limitation C(1) and/or Receiving Water Limitation C(2) each time storm water discharges from the Facility containing pollutants that adversely affect human health or the environment and/or cause or contribute to a violation of an applicable WQS including, but not limited to, the dates identified in Attachment A. Each time that discharges of storm water from the West Valley Facility adversely impact human health or the environment is a separate and distinct violation of Receiving Water Limitation C(1) of the Storm Water Permit and Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a). Each time that discharges of storm water from the West Valley Facility cause or contribute to a violation of an applicable WQS is a separate and distinct violation of Receiving Water Limitation C(2) of the Storm Water Permit and Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a). These discharge violations are ongoing and Waterkeeper will update the dates of violation when additional information and data becomes available. The West Valley Facility Owners and/or Operators are subject to civil penalties for all violations of the Clean Water Act occurring since at least October 8, 2008.

---

[9] WQS include pollutant concentration levels determined by the State Water Resources Control Board and the EPA to be protective of the Beneficial Uses of receiving waters. Discharges above WQS contribute to the impairment of the receiving waters' Beneficial Uses.

Notice of Violation and Intent to File Suit
October 8, 2013
Page 10 of 19

C. **Unauthorized and Authorized Non-Storm Water Discharges from the West Valley Facility in Violation of Discharge Prohibition A(1) of the Storm Water Permit**

Except as authorized by Special Conditions D(1) of the Storm Water Permit, Discharge Prohibition A(1) prohibits permittees from discharging materials other than storm water (non-storm water discharges) either directly or indirectly to waters of the United States. Prohibited non-storm water discharges must be either eliminated or permitted by a separate NPDES permit. *See* Storm Water Permit, Discharge Prohibition A(1).

Information available to Waterkeeper indicates that non-storm water discharges from the Facility due to inadequate BMP development and/or implementation necessary to prevent these discharges. In fact, the Annual Reports document observations of unauthorized non-storm water at the Facility from outdoor washing, cleaning and/or dust control activities, yet there are no BMPs that will prevent these discharges. The Regional Board notified the West Valley Facility Owners and/or Operators of unauthorized non-storm water discharges, which were observed from the western side of the Facility during the Board's inspection. Information available to Waterkeeper indicates that the West Valley Facility Owners and/or Operators have not obtained a separate NPDES permit for the Facility's unauthorized non-storm water discharges, as thus these discharges are in violation of Discharge Prohibition A(1) of the Storm Water Permit.

Certain non-storm water discharges are allowed, such as fire hydrant flushing, drinking fountain water, and landscape watering, only if all requirements under Special Conditions D(1) of the Storm Water Permit are met. Special Conditions D(1) requires, among other things, the development and implementation of BMPs, which must be specifically listed in the SWPPP, to prevent or reduce the contact of non-storm water discharges with significant materials or equipment. The non-storm water discharges also cannot contain significant quantities of pollutants. Thus, even the non-storm water discharges listed in Special Condition D(1), such as irrigation drainage, are prohibited at the Facility because the West Valley Facility Owners and/or Operators have not developed or implemented the required BMPs to prevent pollutant exposure to the non-storm water, and are otherwise not in compliance with Special Conditions D(1) that would authorize such discharges. These non-storm water discharges are not authorized by a separate NPDES permit or subject to Special Condition D(1). Therefore, the West Valley Facility Owners and/or Operators are in violation of the Storm Water Permit for these prohibited non-storm water discharges.

Waterkeeper puts the West Valley Facility Owners and/or Operators on notice that Discharge Prohibition A(1) of the Storm Water Permit is violated each time non-storm water is discharged from the West Valley Facility. These non-storm water discharge violations are ongoing and will continue until the West Valley Facility Owners and/or Operators develop and implement BMPs that prevent prohibited non-storm water discharges, or obtain separate NPDES permit coverage. Each time the West Valley Facility Owners and/or Operators discharge prohibited non-storm water in violation of Discharge Prohibition A(1) of the Storm Water Permit is a separate and distinct violation of the Storm Water Permit and section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a). West Valley Facility Owners and/or Operators are subject to

civil penalties for all violations of the Clean Water Act occurring since October 8, 2008.

**D.**  **Failure to Develop, Implement and/or Revise an Adequate Storm Water Pollution Prevention Plan**

Section A(1) and Provision E(2) of the Storm Water Permit requires dischargers to have developed and implemented a SWPPP by October 1, 1992, or prior to beginning industrial activities, that meets all of the requirements of the Storm Water Permit. The objective of the SWPPP requirement is to identify and evaluate sources of pollutants associated with industrial activities that may affect the quality of storm water discharges, and to implement site-specific BMPs to reduce or prevent pollutants associated with industrial activities in storm water discharges. Storm Water Permit, Section A(2). These BMPs must achieve compliance with the Storm Water Permit's Effluent Limitations and Receiving Water Limitations. To ensure compliance with the Storm Water Permit, the SWPPP must be evaluated on an annual basis pursuant to the requirements of Section A(9). The SWPPP must also be revised as necessary to ensure compliance with the Storm Water Permit. *Id.,* Sections A(9) and A(10).

Sections A(3) – A(10) of the Storm Water Permit set forth the requirements for a SWPPP. Among other information, the SWPPP must include: identification of individual(s) and their responsibilities in developing, implementing, and revising the facility's SWPPP (*see* Section A(3)(a)); a site map with notes, legends, and other data as appropriate to ensure that the site map is clear and understandable, and information including the location of the conveyance system and associated points of discharge (*see id.,* Section A(4)); a list of significant materials handled and stored at the facility (*see id.,* Section A(5)); and a description of the potential pollutant sources at the facility (*see id.,* Section A(6)). Sections A(7) and A(8) require an assessment of potential pollutant sources at the facility and a description of the BMPs to be implemented at the facility that will reduce or prevent pollutants in storm water discharges and authorized non-storm water discharges, including structural BMPs where non-structural BMPs are not effective.

Information available to Waterkeeper indicates that the West Valley Facility Owners and/or Operators have been conducting and continue to conduct operations at the West Valley Facility with an inadequately developed, implemented, and/or revised SWPPP. For example, the Regional Board notified the West Valley Facility Owners and/or Operators in 2000 that the SWPPP did not meet the requirements of the Storm Water Permit. Information available to Waterkeeper indicates that West Valley Facility Owners' and/or Operators' most recent SWPPP is dated June 2009. However, since June 2009, polluted storm water has discharged from the West Valley Facility each Wet Season, evidencing that West Valley Facility Owners and/or Operators have inadequately developed and/or implemented BMPs at the West Valley Facility, and/or failed to revise the SWPPP to address the ongoing and continuing violations of the Storm Water Permit. In fact, the West Valley Facility Owners and/or Operators noted in the 2010-2011 Annual Report that the SWPPP should be updated, but it has not been revised since it was developed in 2009. Thus, the West Valley Facility Owners and/or Operators have failed and continue to fail to develop and/or implement a SWPPP that contains adequate BMPs to prevent

Notice of Violation and Intent to File Suit
October 8, 2013
Page 12 of 19

the exposure of pollutant sources to storm water and the subsequent discharge of polluted storm water from the West Valley Facility.

In addition, the SWPPP fails to identify all significant materials handled and stored at the Facility. The West Valley Facility SWPPP indicates that a list of significant materials that may come into contact with storm water is included in Worksheet No. 2 in Appendix B of the SWPPP. However, the Worksheet No. 2 attached to the SWPPP is blank. Therefore, in violation of Section A(5), the West Valley Facility Owners and/or Operators failed to include in their SWPPP a list of significant materials handled and stored at the Facility.

The SWPPP also fails to comply with the Storm Water Permit because it lacks the required descriptions and assessments of all potential pollutant sources, and fails to describe the BMPs to be implemented at the Facility that will reduce or prevent pollutants in storm water discharges and authorized non-storm water discharges. For example, the site map and the SWPPP reference a storage area for hazardous materials that is located outside of the main building. However, the SWPPP does not contain a description or assessment of this hazardous materials storage area as a potential source of pollution. Because the SWPPP fails to describe and assess the hazardous waste storage area as a potential source of pollution, it also fails to develop corresponding BMPs to reduce or prevent the contamination of storm water with pollutants associated with the storage of hazardous waste. The SWPPP also fails to list the BMPs to be implemented, and has no BMPs to prevent non-storm water discharges. The SWPPP thus is not in compliance with Sections A(6), A(7), and A(8) of the Storm Water Permit.

The SWPPP also fails to include site map that incorporates all the information required by the Storm Water Permit, such as each storm water discharge point and the storm water collection and conveyance system. The West Valley Owners and/or Operators also document in several Annual Reports the need for the site map to be revised to identify the "Pilot Compost Facility" located at the Facility, but this revision has never been made. The site map also fails identify areas of erosion. Finally, the site map does not include notes, legends, or other data needed to identify the meaning of all of the types of lines used on the site map to outline certain features. The SWPPP is therefore not in compliance with Section A(4) of the Storm Water Permit.

Finally, the West Valley Facility Owners and/or Operators fail to identify in their SWPPP the current storm water pollution prevention team, in violation of Section A(3)(a) of the Storm Water Permit. Specifically, the SWPPP lists "Richard Crocket, General Manager" as the Storm Water Pollution Prevention Manager authorized to sign all reports and certifications required by the State Permit; the SWPPP does not identify any other employees responsible for storm water pollution prevention. However, Mr. Crocket has not signed the West Valley Facility Annual Reports for at least the past five years. In fact, the 2010-2011 Annual Report notes that the SWPPP needs to be revised to identify the current pollution prevention team, yet the SWPPP has not been revised to incorporate this required information. Therefore, the SWPPP fails to accurately identify the "responsibilities, duties and activities" of each pollution prevention team member as required. *See* Storm Water Permit, Section A(3)(a). Finally, the SWPPP has not been revised to include the changed activities and expansion of operations at the Facility.

Notice of Violation and Intent to File Suit
October 8, 2013
Page 13 of 19

      Waterkeeper puts the West Valley Facility Owners and/or Operators on notice that they violate Section A and Provision E(2) of the Storm Water Permit and the Clean Water Act every day that they operate the West Valley Facility with an inadequately developed, implemented, and/or revised SWPPP. Every day that the West Valley Facility Owners and/or Operators operate the Facility with an inadequately developed, implemented, and/or revised SWPPP is a separate and distinct violation of the Storm Water Permit and the Clean Water Act. The West Valley Facility Owners and/or Operators have been in daily and continuous violation of the Storm Water Permit's SWPPP requirements. These violations are ongoing and Waterkeeper will include additional violations in its enforcement action. The West Valley Facility Owners and/or Operators are subject to civil penalties for all violations of the Clean Water Act occurring since October 8, 2008.

    **E.**  **Failure to Develop, Implement, and/or Revise an Adequate Monitoring and Reporting Program**

      Section B(1) and Provision E(3) of the Storm Water Permit requires facility operators to develop and implement a monitoring and reporting plan ("M&RP") by October 1, 1992, or prior to the commencement of industrial activities at a facility, that meets all of the requirements of the Storm Water Permit. The primary objective of the M&RP is to detect and measure the concentrations of pollutants in a facility's discharge to ensure compliance with the Storm Water Permit's Discharge Prohibitions, Effluent Limitations, and Receiving Water Limitations. *See* Storm Water Permit, Section B(2). The M&RP must therefore ensure that BMPs are effective, and are evaluated and revised whenever appropriate to ensure compliance with the Storm Water Permit. Dischargers must revise and update the M&RP to reflect current BMPs, and as otherwise required by the Storm Water Permit. *See id., see also id.,* Section B(4).

      Sections B(3) – B(16) of the Storm Water Permit set forth the M&RP requirements. Specifically, Section B(3) requires dischargers to conduct quarterly visual observations of all drainage areas within their facility for the presence of authorized and unauthorized non-storm water discharges. Section B(4) requires dischargers to conduct visual observations of storm water discharges during the first hour of discharge at each discharge point of at least one storm event per month during the Wet Season.[10] Sections B(3) and B(4) further require dischargers to document the presence of any floating or suspended material, O&G, discolorations, turbidity, odor and the source of any pollutants when conducting visual observations. Dischargers must maintain records of observations, observation dates, locations observed, and responses taken to eliminate unauthorized non-storm water discharges and to reduce or prevent pollutants from contacting non-storm water and storm water discharges. *Id.*, Sections B(3) and B(4).

      Sections B(5) and B(7) of the Storm Water Permit require dischargers to collect samples of storm water discharges from all locations where storm water is discharged. Under Section B(5) of the Storm Water Permit, the West Valley Facility Owners and/or Operators are required to collect at least two samples from each discharge point each wet season, including one sample

---

[10] The Wet Season is defined from October 1 through May 31.

from the first storm event of the Wet Season. These samples must be taken during the first hour of discharge. Storm water samples shall be analyzed for TSS, pH, specific conductance, and total organic carbon or O&G. Storm Water Permit, Section B(5)(c)(i). These samples shall also be analyzed for toxic pollutants and other pollutants that are likely to be present in storm water discharges in significant quantities. *Id.*, Section B(5)(c)(ii). Finally, the West Valley Facility is classified as SIC Codes 4953 and 5093 so he Facility's storm water samples must be analyzed for: Ammonia (NH3), Magnesium (Mg), Chemical Oxygen Demand (COD), Arsenic (As), Cadmium (Cd), Cyanide (CN), Lead (Pb), Mercury (Hg), Selenium (Se), Silver (Ag), Zinc (Zn), Copper (Cu), Aluminum (Al), and Iron (Fe). *See id.,* Section B(5)(c)(iii); *see also id.,* Table D.

The West Valley Facility Owners and/or Operators have been conducting operations at the West Valley Facility with an inadequately developed, implemented, and/or revised M&RP. For example, West Valley Facility Owners and/or Operators have failed to analyze storm water samples for all Table D pollutants listed above, and for pollutants likely to be present in the Facility's storm water discharges in significant quantities. Information available to Waterkeeper indicates that pathogens, including *Escherichia coli* and coliform bacteria, are likely to be present in significant quantities in storm water runoff from recycling facilities such as the West Valley Facility. However, the West Valley Facility Owners and/or Operators have not analyzed storm water samples for these, or any, pathogens. The West Valley Facility Owners and/or Operators' failure to collect and analyze storm water samples as required is a violation of Section B(5) of the Storm Water Permit.

The West Valley Facility Owners and/or Operators fail to sample storm water at each storm water discharge point. Since at least the 2007-2008 Wet Season, the West Valley Facility Owners and/or Operators have sampled storm water at only two discharge points, "West Drain" and "East Drain." However, information available to Waterkeeper indicates that there are several storm water discharge points at the Facility. In fact, in the Facility's 2012-2013 Annual Report, the West Valley Facility Owners and/or Operators acknowledge that they failed to sample each discharge location. This failure to sample storm water at each storm water discharge point constitutes a violation of section B(5)(a).

Third, for the first storm event sampled in 2009-2010, the West Valley Facility Owners and/or Operators failed to collect a storm water sample to be analyzed for TOC during the first hour of discharge. While the storm water sample tested for all other pollutants was collected at 8:30 am, the sample tested for TOC was collected at 2:30 pm. This failure to collect a storm water sample during the first hour of discharge constitutes a violation of Section B(5)(a). In addition, the holding time for pH is consistently exceeded, as noted in the laboratory reports included with the Annual Reports. Finally, the detection limits used are often above the EPA Benchmark and CTR standards, thus even when the West Valley Facility Owners and/or Operators report a sample result as Non Detect, or "ND," the pollutant concentration levels are still in excess of permit limits. These deficiencies further evidence the inadequacy of the M&RP.

Fourth, the West Valley Facility Owners and/or Operators fail to conduct quarterly visual observations of unauthorized and authorized discharges, as required by Section B of the Storm Water Permit. First, there is no indication that the observations of both "authorized" and

"unauthorized" non-storm water discharges were made because only one form is used in the 2008-2009 and 2009-2010 Annual Reports to document the required observations entitled "Non-storm water observations." Thus, the West Valley Owners and/or Operators failed to conduct quarterly observations of each type of discharge. Even when one of the non-storm water discharge observations was conducted, they were not done as required. For example, in the 2008-2009 Annual Report, none were made in the July–September quarter and in the 2009-2010 Wet Season, none were made in the October – December quarter. In the 2010-2011 Annual Report the West Valley Owners and/or Operators reported that no non-storm water observations were conducted in the 2nd and 3rd quarters. Because the West Valley Facility Owners and/or Operators failed to take visual observations of non-storm water discharges as required, they also failed to document the presence of any floating or suspended material, O&G, discolorations, turbidity, odor, or the source of any pollutants, in violation of Section B(3) of the Storm Water Permit.

Finally, in violation of Section B(4), the West Valley Facility Owners and/or Operators have failed to adequately conduct monthly Wet Season visual observations, and to report the location of all observations. Specifically, in the 2008-2009 Annual Report, no visual observations were made in October, January, or April; in the 2009-2010 Annual Report, no observations were made in December; and in the 2010-2011 Annual Report, no visual observations were documented in December. In addition, the West Valley Facility Owners and/or Operators failed to report the location of observations made in February, March, May, and June of the 2008-2009 Wet Season; and in all months of the 2009-2010 Wet Season. In the 2011-2012 Annual Report, observations at 4 different discharge locations throughout the 30-acre site were reported as being conducted at the exact same time, and some on days when it reportedly did not rain and thus there was no storm water discharge to observe. In the 2012-2013 Annual Report, observations were taken each month, but were they were improperly conducted on days on which there was no storm water discharge, and/or they were inadequately conducted as the forms used to document the observations are incomplete and lacking information, such as the time the discharge began. Because the West Valley Facility Owners and/or Operators failed to take visual observations of storm water discharges as required, they also failed to document the presence of any floating or suspended material, O&G, discolorations, turbidity, odor, or the source of any pollutants, in violation of Section B(4) of the Storm Water Permit.

The West Valley Facility Owners' and/or Operators' failure to conduct sampling and monitoring as required by the Storm Water Permit demonstrates that they have failed to develop, implement and/or revise an M&RP that complies with the requirements of Section B and Provision E(3) of the Storm Water Permit. The West Valley Facility Owners and/or Operators have been, and will continue to be, in daily and continuous violation of the Storm Water Permit's M&RP requirements each day they operate with an inadequately developed, implemented, and/or revised M&RP. Every day that the West Valley Facility Owners and/or Operators conduct operations with an inadequately developed, implemented, and/or revised M&RP, is a separate and distinct violation of the Storm Water Permit and the Clean Water Act. These violations are ongoing and Waterkeeper will update the number of violations throughout this enforcement action. The West Valley Facility Owners and/or Operators are subject to civil penalties for all violations of the Clean Water Act occurring since October 8, 2008.

Notice of Violation and Intent to File Suit
October 8, 2013
Page 16 of 19

### F.  Failure to Comply with the Storm Water Permit's Reporting Requirements

Section B(14) of the Storm Water Permit requires a permittee to submit an Annual Report to the Regional Board by July 1 of each year. The Storm Water Permit, in relevant part, requires that the Annual Report include the following: 1) a summary of visual observations and sampling results, 2) an evaluation of the visual observation and sampling and analysis results and the laboratory reports; and 3) the Annual Comprehensive Site Compliance Evaluation Report. Storm Water Permit, Section B(14). As part of the Annual Comprehensive Site Compliance Evaluation, which must be included in the Annual Report, the facility operator shall review and evaluate all of the BMPs to determine whether they are adequate or whether SWPPP revisions are needed. *See* Storm Water Permit, Section A(9). The Annual Report shall be signed and certified by a duly authorized representative, under penalty of law that the information submitted is true, accurate, and complete to the best of their knowledge. *See* Storm Water Permit, Sections B(14), C(9), and C(10).

The West Valley Facility Owners and/or Operators fail to submit Annual Reports that comply with the Storm Water Permit reporting requirements. For example, in the 2007-2008, 2008-2009, and 2009-2010 Annual Reports, the West Valley Facility Owners and/or Operators certified that: (1) a complete Annual Comprehensive Site Compliance Evaluation ("ACSCE") was done pursuant to Section A(9) of the Storm Water Permit; (2) the SWPPP's BMPs address existing potential pollutant sources; and (3) the SWPPP complies with the Storm Water Permit, or will otherwise be revised to achieve compliance. However, information available to Waterkeeper indicates that these certifications were erroneous because an ACSCE that complies with the Storm Water Permit was not conducted, the SWPPP was not evaluated as required, and/or because the BMPs were not evaluated or revised as required. For example, the certifications were made even though the West Valley Facility Owners and/or Operators document violations and specifically note non-compliance. Additionally, in the Facility's 2010-2011 and 2011-2012 Annual Reports, the West Valley Facility Owners and/or Operators admitted that they had failed to comply with the Storm Water Permit on various grounds, and accordingly declined to certify compliance in Section J of the Annual Report. As another example, the 2010-2011 and 2011-2012 Annual Reports are not signed by a responsible corporate officer, and the 2012-2013 Annual Report is not signed at all, in violation of the Storm Water Permit, Section C(9). Finally, the West Valley Owners and/or Operators also certified that they reviewed the SWPPP site map and that it is in compliance with the Storm Water Permit, after they documented the need to revise the SWPPP site map.

The West Valley Facility Owners and/or Operators have also submitted incomplete Annual Reports. For instance, many of the Annual Report's forms used to document visual observations or other information required to be provided with the Annual Report are left blank. In addition, the facility operator must report any noncompliance at the time that the Annual Report is submitted, including 1) a description of the noncompliance and its cause, 2) the period of noncompliance and, if the noncompliance has not been corrected, the anticipated time it is expected to continue, and 3) steps taken or planned to reduce and prevent recurrence of the

Notice of Violation and Intent to File Suit
October 8, 2013
Page 17 of 19

noncompliance. Storm Water Permit, Section C(11)(d). The West Valley Owners and/or
Operators do not report their non-compliance as required.

Finally, the Storm Water Permit requires a permittee whose discharge exceeds the Storm
Water Permit Receiving Water Limitations to submit a written report identifying what additional
BMPs will be implemented to achieve water quality standards. Storm Water Permit, Receiving
Water Limitations C(3) and C(4). Information available to Waterkeeper indicates that the West
Valley Facility Owners and/or Operators have failed to submit the reports required by Receiving
Water Limitations C(3) and C(4) of the Storm Water Permit. As such, the West Valley Facility
Owners and/or Operators are in daily violation of this requirement of the Storm Water Permit.

Each of the failures to report as required discussed above is a violation of the Storm
Water Permit, and indicates a continuous and ongoing failure to comply with the Storm Water
Permit's reporting requirements. The West Valley Facility Owners and/or Operators have been,
and will continue to be, in daily and continuous violation of the Storm Water Permit's reporting
requirements until their reporting complies with the Permit. Every day that the West Valley
Facility Owners and/or Operators operate the West Valley Facility without reporting as required
by the Storm Water Permit is a separate and distinct violation of the Storm Water Permit and
Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a). These violations are ongoing and
Waterkeeper will update the number of violations throughout this enforcement action. The West
Valley Facility Owners and/or Operators have been in daily and continuous violation of the
Storm Water Permit's reporting requirements every day. The West Valley Facility Owners
and/or Operators are subject to civil penalties for all violations of the Clean Water Act occurring
since October 8, 2008.

## IV.   RELIEF AND PENALTIES SOUGHT FOR VIOLATIONS OF THE CLEAN
WATER ACT

Pursuant to Section 309(d) of the Clean Water Act, 33 U.S.C. § 1319(d), and the
Adjustment of Civil Monetary Penalties for Inflation, 40 C.F.R. § 19.4, each separate violation of
the Clean Water Act subjects the violator to a penalty for all violations occurring during the
period commencing five years prior to the date of a notice of intent to file suit letter. These
provisions of law authorize civil penalties of up to $32,500 per day per violation for all Clean
Water Act violations between March 15, 2004 and January 12, 2009, and $37,500 per day per
violation for all Clean Water Act violations after January 12, 2009. In addition to civil penalties,
Waterkeeper will seek injunctive relief preventing further violations of the Clean Water Act
pursuant to Sections 505(a) and (d), 33 U.S.C. § 1365(a) and (d), declaratory relief, and such
other relief as permitted by law. Lastly, pursuant to Section 505(d) of the Clean Water Act, 33
U.S.C. § 1365(d), Waterkeeper will seek to recover its costs, including attorneys' and experts'
fees, associated with this enforcement action.

## V.   CONCLUSION

Upon expiration of the 60-day notice period, Waterkeeper will file a citizen suit under
Section 505(a) of the Clean Water Act for the West Valley Facility Owners' and/or Operators'

Notice of Violation and Intent to File Suit
October 8, 2013
Page 18 of 19


violations of the Storm Water Permit. During the 60-day notice period, however, Waterkeeper is willing to discuss effective remedies for the violations noted in this Notice Letter. If you wish to pursue such discussions please contact Waterkeeper. Please direct all communications to Waterkeeper's legal counsel:

>       Daniel Cooper
>           daniel@lawyersforcleanwater.com
>       Layne Friedrich
>           layne@lawyersforcleanwater.com
>       Lawyers for Clean Water, Inc.
>       1004-A O'Reilly Avenue
>       San Francisco, California 94129
>       Tel: (415) 440-6520


Sincerely,

*Garry Brown*

Garry Brown
Executive Director
Orange County Coastkeeper

Notice of Violation and Intent to File Suit
October 8, 2013
Page 19 of 19

## SERVICE LIST

<u>VIA U.S. MAIL</u>

Gina McCarthy
Administrator
U.S. Environmental Protection Agency
Ariel Rios Building
1200 Pennsylvania Avenue, N.W.
Washington, D.C. 20460

Jared Blumenfeld
Regional Administrator
U.S. Environmental Protection Agency
Region IX
75 Hawthorne Street
San Francisco, California 94105

Thomas Howard
Executive Director
State Water Resources Control Board
P.O. Box 100
Sacramento, California 95812

Kurt Berchtold
Executive Officer
Santa Ana Regional Water Quality Control Board
3737 Main Street, Suite 500
Riverside, California 92501

## Attachment A: Table of Storm Water Sampling Data at the West Valley Facility Demonstrating Storm Water Permit Violations

| Sampling Date | Sampling Location | Parameter | Sample Result | Units | Benchmark[1] | Magnitude of Benchmark Exceedance | CTR criteria, if exceeded[2,3] |
|---|---|---|---|---|---|---|---|
| 11/4/08 | East Drain | Aluminum | 15 | mg/L | 0.75 | 20 | |
| 11/4/08 | East Drain | COD | 2600 | mg/L | 120 | 21.67 | |
| 11/4/08 | East Drain | Copper | 0.39 | mg/L | 0.0123 | 31.71 | 0.014 |
| 11/4/08 | East Drain | Iron | 22 | mg/L | 1 | 22 | |
| 11/4/08 | East Drain | TOC | 640 | mg/L | 110 | 5.82 | |
| 11/4/08 | East Drain | pH | 5.9 | pH Units | 6.0-9.0 | n/a | |
| 11/4/08 | East Drain | SC | 1100 | umhos/cm | 200 | 5.5 | |
| 11/4/08 | East Drain | TSS | 850 | mg/L | 100 | 8.5 | |
| 11/4/08 | East Drain | Zinc | 1.7 | mg/L | 0.11 | 15.45 | |
| 11/4/08 | West Drain | Aluminum | 6.1 | mg/L | 0.75 | 8.13 | |
| 11/4/08 | West Drain | COD | 1700 | mg/L | 120 | 14.17 | |
| 11/4/08 | West Drain | Iron | 10.0 | mg/L | 1.0 | 10 | |
| 11/4/08 | West Drain | SC | 1300 | umhos/cm | 200 | 6.5 | |
| 11/4/08 | West Drain | TOC | 610 | mg/L | 110 | 5.55 | |
| 11/4/08 | West Drain | TSS | 210 | mg/L | 100 | 2.1 | |
| 11/4/08 | West Drain | Zinc | 1.1 | mg/L | 0.11 | 10 | |
| 12/15/08 | East Drain | Aluminum | 2.6 | mg/L | 0.75 | 3.47 | |

---

[1] Copper and zinc are water hardness dependent. The EPA Benchmarks listed in this table are based on a hardness of 75-100 mg/L. *See* Multi-Sector Permit, pp. 89 and 102 (Subsector K and N Benchmark Values).

[2] The CTR criteria for "priority toxic pollutants" are set forth in 40 C.F.R. § 131.38. These criteria are expressed as dissolved metal concentrations in the CTR. However, the Storm Water Permit requires permittees to report their sample results as total metal concentrations. *See* Storm Water Permit, Section B(10)(b). In order to compare the sample results reported in the Jack's Disposal Facility's Annual Reports with the CTR criteria, Waterkeeper used the CTR criteria converted to total metal concentrations set forth in the State Board's "Water Quality Goals" database, available at http://www.waterboards.ca.gov/water_issues/programs/water_quality_goals/. The formula used to convert the CTR criteria to total metal concentrations is set forth in the CTR at 40 C.F.R. § 131.38(b)(2)(i).

[3] WQS for copper and zinc are hardness dependent. The CTR criteria listed in this table are based on an assumed hardness of 100 mg/L. *See* 40 C.F.R. § 131.38.

1

| Date | Location | Parameter | | Unit | | | |
|---|---|---|---|---|---|---|---|
| 12/15/08 | East Drain | COD | 150 | mg/L | 120 | 1.25 | 0.014 |
| 12/15/08 | East Drain | Copper | 0.038 | mg/L | 0.0123 | 3.09 | |
| 12/15/08 | East Drain | Iron | 3.5 | mg/L | 1.0 | 3.5 | |
| 12/15/08 | East Drain | Zinc | 0.14 | mg/L | 0.11 | 1.27 | |
| 12/15/08 | West Drain | Aluminum | 7.7 | mg/L | 0.75 | 10.27 | |
| 12/15/08 | West Drain | COD | 620 | mg/L | 120 | 5.17 | |
| 12/15/08 | West Drain | TOC | 120 | mg/L | 110 | 1.09 | |
| 12/15/08 | West Drain | Copper | 0.077 | mg/L | 0.0123 | 6.26 | 0.014 |
| 12/15/08 | West Drain | Iron | 10.0 | mg/L | 1.0 | 10 | |
| 12/15/08 | West Drain | SC | 1100 | umhos/cm | 200 | 5.5 | |
| 12/15/08 | West Drain | TSS | 290 | mg/L | 100 | 2.9 | |
| 12/15/08 | West Drain | Zinc | 0.41 | mg/L | 0.11 | 3.73 | |
| 10/14/09 | East Drain | Aluminum | 32.0 | mg/L | 0.75 | 42.67 | |
| 10/14/09 | East Drain | COD | 3600 | mg/L | 120 | 30 | |
| 10/14/09 | East Drain | Copper | 0.49 | mg/L | 0.0123 | 39.84 | 0.014 |
| 10/14/09 | East Drain | Iron | 49.0 | mg/L | 1.0 | 49 | |
| 10/14/09 | East Drain | Lead | 0.36 | mg/L | 0.069 | 5.22 | 0.082 |
| 10/14/09 | East Drain | pH | 5.9 | pH Units | 6.0-9.0 | n/a | |
| 10/14/09 | East Drain | SC | 730 | umhos/cm | 200 | 3.65 | |
| 10/14/09 | East Drain | TOC | 880 | mg/L | 110 | 8 | |
| 10/14/09 | East Drain | TSS | 3000 | mg/L | 100 | 30 | |
| 10/14/09 | East Drain | Zinc | 3 | mg/L | 0.11 | 27.27 | |
| 10/14/09 | West Drain | Aluminum | 5.8 | mg/L | 0.75 | 7.73 | |
| 10/14/09 | West Drain | COD | 1900 | mg/L | 120 | 15.83 | |
| 10/14/09 | West Drain | Copper | 0.088 | mg/L | 0.0123 | 7.15 | 0.014 |
| 10/14/09 | West Drain | Iron | 8.6 | mg/L | 1.0 | 8.6 | |
| 10/14/09 | West Drain | SC | 1300 | umhos/cm | 200 | 6.5 | |
| 10/14/09 | West Drain | TOC | 590 | mg/L | 110 | 5.36 | |
| 10/14/09 | West Drain | TSS | 330 | mg/L | 100 | 3.3 | |
| 10/14/09 | West Drain | Zinc | 0.42 | mg/L | 0.11 | 3.82 | |
| 12/7/09 | East Drain | Aluminum | 19 | mg/L | 0.75 | 25.33 | |
| 12/7/09 | East Drain | COD | 1000 | mg/L | 120 | 8.33 | |

2

3

| Date | Location | Parameter | Value | Units | Value | Value | Limit |
|---|---|---|---|---|---|---|---|
| 12/7/09 | East Drain | Copper | 0.35 | mg/L | 0.0123 | 28.46 | 0.014 |
| 12/7/09 | East Drain | Iron | 31.0 | mg/L | 1.0 | 31 | 0.082 |
| 12/7/09 | East Drain | Lead | 0.3 | mg/L | 0.069 | 4.35 | |
| 12/7/09 | East Drain | SC | 460 | umhos/cm | 200 | 2.3 | |
| 12/7/09 | East Drain | TOC | 270 | mg/L | 110 | 2.45 | |
| 12/7/09 | East Drain | TSS | 2200 | mg/L | 100 | 22 | |
| 12/7/09 | East Drain | Zinc | 1.8 | mg/L | 0.11 | 16.36 | |
| 12/7/09 | West Drain | Aluminum | 22 | mg/L | 0.75 | 29.33 | |
| 12/7/09 | West Drain | COD | 2400 | mg/L | 120 | 20 | 0.014 |
| 12/7/09 | West Drain | Copper | 0.14 | mg/L | 0.0123 | 11.38 | |
| 12/7/09 | West Drain | Iron | 32.0 | mg/L | 1.0 | 32 | 0.082 |
| 12/7/09 | West Drain | Lead | 0.12 | mg/L | 0.069 | 1.74 | |
| 12/7/09 | West Drain | SC | 700 | umhos/cm | 200 | 3.5 | |
| 12/7/09 | West Drain | TOC | 430 | mg/L | 110 | 3.91 | |
| 12/7/09 | West Drain | TSS | 1200 | mg/L | 100 | 12 | |
| 12/7/09 | West Drain | Zinc | 0.77 | mg/L | 0.11 | 7 | |
| 10/6/10 | East Drain | Aluminum | 13.0 | mg/L | 0.75 | 17.33 | |
| 10/6/10 | East Drain | COD | 3600 | mg/L | 120 | 30 | 0.014 |
| 10/6/10 | East Drain | Copper | 0.38 | mg/L | 0.0123 | 30.89 | |
| 10/6/10 | East Drain | Iron | 26.0 | mg/L | 1.0 | 26 | 0.082 |
| 10/6/10 | East Drain | Lead | 0.16 | mg/L | 0.069 | 2.32 | |
| 10/6/10 | East Drain | pH | 4.9 | pH Units | 6.0-9.0 | n/a | |
| 10/6/10 | East Drain | SC | 1600 | umhos/cm | 200 | 8 | |
| 10/6/10 | East Drain | TOC | 1000 | mg/L | 110 | 9.09 | |
| 10/6/10 | East Drain | TSS | 890 | mg/L | 100 | 8.9 | |
| 10/6/10 | East Drain | Zinc | 1.8 | mg/L | 0.11 | 16.36 | |
| 10/6/10 | West Drain | Aluminum | 10.0 | mg/L | 0.75 | 13.33 | |
| 10/6/10 | West Drain | COD | 2900 | mg/L | 120 | 24.17 | 0.014 |
| 10/6/10 | West Drain | Copper | 0.16 | mg/L | 0.0123 | 13.01 | |
| 10/6/10 | West Drain | Iron | 17.0 | mg/L | 1.0 | 17 | |
| 10/6/10 | West Drain | pH | 5.9 | pH Units | 6.0-9.0 | n/a | |
| 10/6/10 | West Drain | SC | 1800 | umhos/cm | 200 | 900 | |

| Date | Location | Parameter | Result | Units | Limit | Ratio | |
|---|---|---|---|---|---|---|---|
| 10/6/10 | West Drain | TOC | 890 | mg/L | 110 | 8.09 | |
| 10/6/10 | West Drain | TSS | 370 | mg/L | 100 | 3.7 | |
| 10/6/10 | West Drain | Zinc | 0.67 | mg/L | 0.11 | 6.09 | |
| 12/29/10 | East Drain | Aluminum | 11.0 | mg/L | 0.75 | 14.67 | |
| 12/29/10 | East Drain | COD | 1400 | mg/L | 120 | 11.67 | |
| 12/29/10 | East Drain | Copper | 0.13 | mg/L | 0.0123 | 10.57 | 0.014 |
| 12/29/10 | East Drain | Iron | 16.0 | mg/L | 1.0 | 16 | |
| 12/29/10 | East Drain | SC | 260 | umhos/cm | 200 | 1.3 | |
| 12/29/10 | East Drain | TSS | 680 | mg/L | 100 | 6.8 | |
| 12/29/10 | East Drain | Zinc | 0.87 | mg/L | 0.11 | 7.91 | |
| 12/29/10 | West Drain | Aluminum | 7.2 | mg/L | 0.75 | 9.6 | |
| 12/29/10 | West Drain | COD | 1600 | mg/L | 120 | 13.33 | |
| 12/29/10 | West Drain | Copper | 0.069 | mg/L | 0.0123 | 5.61 | 0.014 |
| 12/29/10 | West Drain | Iron | 12.0 | mg/L | 1.0 | 12 | |
| 12/29/10 | West Drain | SC | 710 | umhos/cm | 200 | 3.55 | |
| 12/29/10 | West Drain | TOC | 230 | mg/L | 110 | 2.09 | |
| 12/29/10 | West Drain | TSS | 350 | mg/L | 100 | 3.5 | |
| 12/29/10 | West Drain | Zinc | 0.35 | mg/L | 0.11 | 3.18 | |
| 12/29/10 | East Drain | Aluminum | 33.0 | mg/L | 0.75 | 44 | |
| 10/5/11 | East Drain | COD | 4900 | mg/L | 120 | 40.83 | |
| 10/5/11 | East Drain | Copper | 0.17 | mg/L | 0.0123 | 13.82 | 0.014 |
| 10/5/11 | East Drain | Iron | 11.0 | mg/L | 1.0 | 11 | |
| 10/5/11 | East Drain | pH | 5.2 | pH Units | 6.0-9.0 | n/a | |
| 10/5/11 | East Drain | SC | 1700 | umhos/cm | 200 | 8.5 | |
| 10/5/11 | East Drain | TOC | 1300 | mg/L | 110 | 11.82 | |
| 10/5/11 | East Drain | TSS | 2500 | mg/L | 100 | 25 | |
| 10/5/11 | East Drain | Zinc | 0.55 | mg/L | 0.11 | 5 | |
| 10/5/11 | West Drain | Aluminum | 31.0 | mg/L | 0.75 | 41.33 | |
| 10/5/11 | West Drain | COD | 230 | mg/L | 120 | 1.92 | |
| 10/5/11 | West Drain | Copper | 0.79 | mg/L | 0.0123 | 64.23 | 0.014 |
| 10/5/11 | West Drain | Iron | 57.0 | mg/L | 1.0 | 57 | |
| 10/5/11 | West Drain | Lead | 0.37 | mg/L | 0.069 | 5.36 | 0.082 |

4

| Date | Location | Parameter | Value | Unit | | | |
|---|---|---|---|---|---|---|---|
| 10/5/11 | West Drain | SC | 1300 | umhos/cm | 200 | 6.5 | |
| 10/5/11 | West Drain | TSS | 300 | mg/L | 100 | 3 | |
| 10/5/11 | West Drain | Zinc | 4.1 | mg/L | 0.11 | 37.27 | |
| 2/15/12 | East Drain | Aluminum | 6.0 | mg/L | 0.75 | 8 | |
| 2/15/12 | East Drain | COD | 960 | mg/L | 120 | 8 | |
| 2/15/12 | East Drain | Copper | 0.074 | mg/L | 0.0123 | 6.02 | 0.014 |
| 2/15/12 | East Drain | Iron | 9.3 | mg/L | 1.0 | 9.3 | |
| 2/15/12 | East Drain | SC | 1100 | umhos/cm | 200 | 5.5 | |
| 2/15/12 | East Drain | TSS | 480 | mg/L | 100 | 4.8 | |
| 2/15/12 | East Drain | Zinc | 0.45 | mg/L | 0.11 | 4.09 | |
| 2/15/12 | West Drain | Aluminum | 8.5 | mg/L | 0.75 | 11.33 | |
| 2/15/12 | West Drain | COD | 2400 | mg/L | 120 | 20 | |
| 2/15/12 | West Drain | Copper | 0.031 | mg/L | 0.0123 | 2.52 | 0.014 |
| 2/15/12 | West Drain | Iron | 15.0 | mg/L | 1.0 | 15 | |
| 2/15/12 | West Drain | SC | 1700 | umhos/cm | 200 | 8.5 | |
| 2/15/12 | West Drain | TOC | 440 | mg/L | 110 | 4 | |
| 2/15/12 | West Drain | TSS | 1100 | mg/L | 100 | 11 | |
| 2/15/12 | West Drain | Zinc | 0.15 | mg/L | 0.11 | 1.36 | |
| 10/12/12 | East Drain | Aluminum | 4.9 | mg/L | 0.75 | 6.53 | |
| 10/12/12 | East Drain | COD | 510 | mg/L | 120 | 4.25 | |
| 10/12/12 | East Drain | Copper | 0.056 | mg/L | 0.0123 | 4.55 | 0.014 |
| 10/12/12 | East Drain | Iron | 7.1 | mg/L | 1.0 | 7.1 | |
| 10/12/12 | East Drain | SC | 210 | umhos/cm | 200 | 1.05 | |
| 10/12/12 | East Drain | TSS | 280 | mg/L | 100 | 2.8 | |
| 10/12/12 | East Drain | Zinc | 0.53 | mg/L | 0.11 | 4.82 | 0.12 |
| 10/12/12 | West Drain | Aluminum | 41.0 | mg/L | 0.75 | 54.67 | |
| 10/12/12 | West Drain | COD | 2800 | mg/L | 120 | 23.33 | |
| 10/12/12 | West Drain | Copper | 0.17 | mg/L | 0.0123 | 13.82 | 0.014 |
| 10/12/12 | West Drain | Iron | 55.0 | mg/L | 1.0 | 55 | |
| 10/12/12 | West Drain | Lead | 0.12 | mg/L | 0.069 | 1.74 | 0.082 |
| 10/12/12 | West Drain | SC | 490 | umhos/cm | 200 | 2.45 | |
| 10/12/12 | West Drain | TSS | 1600 | mg/L | 100 | 16 | |

| Date | Location | Parameter | Value | Units | | | |
|---|---|---|---|---|---|---|---|
| 10/12/12 | West Drain | Zinc | 0.71 | mg/L | 0.11 | 6.45 | 0.12 |
| 2/15/13 | East Drain | Aluminum | 6.0 | mg/L | 0.75 | 8 | |
| 2/15/13 | East Drain | COD | 960 | mg/L | 120 | 8 | |
| 2/15/13 | East Drain | Copper | 0.074 | mg/L | 0.0123 | 6.02 | 0.014 |
| 2/15/13 | East Drain | Iron | 9.3 | mg/L | 1.0 | 9.3 | |
| 2/15/13 | East Drain | SC | 1100 | umhos/cm | 200 | 5.5 | |
| 2/15/13 | East Drain | TSS | 480 | mg/L | 100 | 4.8 | |
| 2/15/13 | East Drain | Zinc | 0.45 | mg/L | 0.11 | 4.09 | 0.12 |
| 2/15/13 | West Drain | Aluminum | 8.5 | mg/L | 0.75 | 11.33 | |
| 2/15/13 | West Drain | COD | 2400 | mg/L | 120 | 20 | |
| 2/15/13 | West Drain | Copper | 0.031 | mg/L | 0.0123 | 2.52 | 0.014 |
| 2/15/13 | West Drain | Iron | 15.0 | mg/L | 1.0 | 15 | |
| 2/15/13 | West Drain | SC | 1700 | umhos/cm | 200 | 8.5 | |
| 2/15/13 | West Drain | TOC | 440 | mg/L | 110 | 4 | |
| 2/15/13 | West Drain | TSS | 1100 | mg/L | 100 | 11 | |
| 2/15/13 | West Drain | Zinc | 0.15 | mg/L | 0.11 | 1.36 | 0.12 |

6

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES JUDGES

This case has been assigned to District Judge _____Jesus G. Bernal_____ and the assigned
Magistrate Judge is _____David T. Bristow_____ .

The case number on all documents filed with the Court should read as follows:

### ED CV 14-69 JGB (DTBx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of
California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge.

Clerk, U. S. District Court

_____January 13, 2014_____
Date

By  L. Adams
Deputy Clerk

---

## NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is
filed, a copy of this notice must be served on all plaintiffs).*

**Subsequent documents must be filed at the following location:**

| ☐ Western Division | ☐ Southern Division | ☐ Eastern Division |
|---|---|---|
| 312 N. Spring Street, G-8 | 411 West Fourth St., Ste 1053 | 3470 Twelfth Street, Room 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701 | Riverside, CA 92501 |

**Failure to file at the proper location will result in your documents being returned to you.**

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL COVER SHEET**

| **I. (a) PLAINTIFFS** ( Check box if you are representing yourself ☐ ) | **DEFENDANTS** ( Check box if you are representing yourself ☐ ) |
|---|---|
| INLAND EMPIRE WATERKEEPER, a program of Orange County Coastkeeper; ORANGE COUNTY COASTKEEPER, a California non-profit corporation | BURRTEC WASTE GROUP, INC., a CA corporation; BURRTEC WASTE INDUSTRIES, INC., a CA corporation; WEST VALLEY RECYCLING AND TRANSFER INC., a CA corporation; WEST VALLEY MRF, LLC, a CA limited liability company |

| **(b)** County of Residence of First Listed Plaintiff   Riverside | County of Residence of First Listed Defendant   San Bernardino |
|---|---|
| *(EXCEPT IN U.S. PLAINTIFF CASES)* | *(IN U.S. PLAINTIFF CASES ONLY)* |

| **(c) Attorneys** *(Firm Name, Address and Telephone Number)* If you are representing yourself, provide the same information. | **Attorneys** *(Firm Name, Address and Telephone Number)* If you are representing yourself, provide the same information. |
|---|---|
| Daniel Cooper (Bar No. 153576)<br>Lawyers for Clean Water, Inc.<br>1004A O'Reilly Avenue, San Francisco, California, 94129<br>(415) 440-6250 | |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1. U.S. Government Plaintiff

☒ 3. Federal Question (U.S. Government Not a Party)

☐ 2. U.S. Government Defendant

☐ 4. Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES**-For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1. Original Proceeding

☐ 2. Removed from State Court

☐ 3. Remanded from Appellate Court

☐ 4. Reinstated or Reopened

☐ 5. Transferred from Another District (Specify)

☐ 6. Multi-District Litigation

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☐ Yes ☒ No  (Check "Yes" only if demanded in complaint.)

**CLASS ACTION** under F.R.Cv.P. 23: ☐ Yes ☒ No          ☐ **MONEY DEMANDED IN COMPLAINT: $**

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
33 U.S.C. §§ 1251 et seq. (Clean Water Act); discharges of pollutants in violation of the Clean Water Act and California Permit for Discharges of Stormwater Associated with Industrial Activities

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | REAL PROPERTY CONT. | IMMIGRATION | PRISONER PETITIONS | PROPERTY RIGHTS |
|---|---|---|---|---|---|
| ☐ 375 False Claims Act | ☐ 110 Insurance | ☐ 240 Torts to Land | ☐ 462 Naturalization Application | **Habeas Corpus:** | ☐ 820 Copyrights |
| ☐ 400 State Reapportionment | ☐ 120 Marine | ☐ 245 Tort Product Liability | ☐ 465 Other Immigration Actions | ☐ 463 Alien Detainee | ☐ 830 Patent |
| ☐ 410 Antitrust | ☐ 130 Miller Act | ☐ 290 All Other Real Property | | ☐ 510 Motions to Vacate Sentence | ☐ 840 Trademark |
| ☐ 430 Banks and Banking | ☐ 140 Negotiable Instrument | **TORTS** | **TORTS** | ☐ 530 General | **SOCIAL SECURITY** |
| ☐ 450 Commerce/ICC Rates/Etc. | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | **PERSONAL INJURY** | **PERSONAL PROPERTY** | ☐ 535 Death Penalty | ☐ 861 HIA (1395ff) |
| ☐ 460 Deportation | | ☐ 310 Airplane | ☐ 370 Other Fraud | **Other:** | ☐ 862 Black Lung (923) |
| ☐ 470 Racketeer Influenced & Corrupt Org. | ☐ 151 Medicare Act | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 540 Mandamus/Other | ☐ 863 DIWC/DIWW (405 (g)) |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Vet.) | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 550 Civil Rights | ☐ 864 SSID Title XVI |
| ☐ 490 Cable/Sat TV | | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 555 Prison Condition | ☐ 865 RSI (405 (g)) |
| ☐ 850 Securities/Commodities/Exchange | ☐ 153 Recovery of Overpayment of Vet. Benefits | ☐ 340 Marine | **BANKRUPTCY** | ☐ 560 Civil Detainee Conditions of Confinement | **FEDERAL TAX SUITS** |
| ☐ 890 Other Statutory Actions | ☐ 160 Stockholders' Suits | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | **FORFEITURE/PENALTY** | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 891 Agricultural Acts | ☐ 190 Other Contract | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☒ 893 Environmental Matters | ☐ 195 Contract Product Liability | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 690 Other | |
| ☐ 895 Freedom of Info. Act | ☐ 196 Franchise | ☐ 360 Other Personal Injury | ☐ 440 Other Civil Rights | **LABOR** | |
| ☐ 896 Arbitration | **REAL PROPERTY** | ☐ 362 Personal Injury-Med Malpractice | ☐ 441 Voting | ☐ 710 Fair Labor Standards Act | |
| ☐ 899 Admin. Procedures Act/Review of Appeal of Agency Decision | ☐ 210 Land Condemnation | ☐ 365 Personal Injury-Product Liability | ☐ 442 Employment | ☐ 720 Labor/Mgmt. Relations | |
| | ☐ 220 Foreclosure | ☐ 367 Health Care/Pharmaceutical Personal Injury Product Liability | ☐ 443 Housing/Accomodations | ☐ 740 Railway Labor Act | |
| ☐ 950 Constitutionality of State Statutes | ☐ 230 Rent Lease & Ejectment | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 445 American with Disabilities-Employment | ☐ 751 Family and Medical Leave Act | |
| | | | ☐ 446 American with Disabilities-Other | ☐ 790 Other Labor Litigation | |
| | | | ☐ 448 Education | ☐ 791 Employee Ret. Inc. Security Act | |

| FOR OFFICE USE ONLY: | Case Number: | ED CV 14 - 00069 JGB (DTBx) |
|---|---|---|
| CV-71 (11/13) | CIVIL COVER SHEET | Page 1 of 3 |

JAN 13 2014

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL COVER SHEET**

**VIII.  VENUE:** Your answers to the questions below will determine the division of the Court to which this case will most likely be initially assigned. This initial assignment is subject to change, in accordance with the Court's General Orders, upon review by the Court of your Complaint or Notice of Removal.

| Question A: Was this case removed from state court? | STATE CASE WAS PENDING IN THE COUNTY OF: | INITIAL DIVISION IN CACD IS: |
|---|---|---|
| ☐ Yes  ☒ No | ☐ Los Angeles | Western |
| If "no," go to Question B. If "yes," check the box to the right that applies, enter the corresponding division in response to Question D, below, and skip to Section IX. | ☐ Ventura, Santa Barbara, or San Luis Obispo | Western |
|  | ☐ Orange | Southern |
|  | ☐ Riverside or San Bernardino | Eastern |

Question B: Is the United States, or one of its agencies or employees, a party to this action?

☐ Yes  ☒ No

If "no," go to Question C. If "yes," check the box to the right that applies, enter the corresponding division in response to Question D, below, and skip to Section IX.

If the United States, or one of its agencies or employees, is a party, is it:

| A PLAINTIFF? Then check the box below for the county in which the majority of DEFENDANTS reside. | A DEFENDANT? Then check the box below for the county in which the majority of PLAINTIFFS reside. | INITIAL DIVISION IN CACD IS: |
|---|---|---|
| ☐ Los Angeles | ☐ Los Angeles | Western |
| ☐ Ventura, Santa Barbara, or San Luis Obispo | ☐ Ventura, Santa Barbara, or San Luis Obispo | Western |
| ☐ Orange | ☐ Orange | Southern |
| ☐ Riverside or San Bernardino | ☐ Riverside or San Bernardino | Eastern |
| ☐ Other | ☐ Other | Western |

| Question C: Location of plaintiffs, defendants, and claims? (Make only one selection per row) | A. Los Angeles County | B. Ventura, Santa Barbara, or San Luis Obispo Counties | C. Orange County | D. Riverside or San Bernardino Counties | E. Outside the Central District of California | F. Other |
|---|---|---|---|---|---|---|
| Indicate the location in which a majority of plaintiffs reside: | ☐ | ☐ | ☐ | ☒ | ☐ | ☐ |
| Indicate the location in which a majority of defendants reside: | ☐ | ☐ | ☐ | ☒ | ☐ | ☐ |
| Indicate the location in which a majority of claims arose: | ☐ | ☐ | ☐ | ☒ | ☐ | ☐ |

**C.1. Is either of the following true? If so, check the one that applies:**

☐ 2 or more answers in Column C

☐ only 1 answer in Column C and no answers in Column D

Your case will initially be assigned to the
SOUTHERN DIVISION.
Enter "Southern" in response to Question D, below.

If none applies, answer question C2 to the right.  ➡

**C.2. Is either of the following true? If so, check the one that applies:**

☒ 2 or more answers in Column D

☐ only 1 answer in Column D and no answers in Column C

Your case will initially be assigned to the
EASTERN DIVISION.
Enter "Eastern" in response to Question D, below.

If none applies, go to the box below.  ⬇

Your case will initially be assigned to the
WESTERN DIVISION.
Enter "Western" in response to Question D below.

| Question D: Initial Division? | INITIAL DIVISION IN CACD |
|---|---|
| Enter the initial division determined by Question A, B, or C above: ➡ | EASTERN DIVISION |

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

**IX(a). IDENTICAL CASES:** Has this action been previously filed **in this court** and dismissed, remanded or closed?   ☒ NO   ☐ YES

If yes, list case number(s): _____

**IX(b). RELATED CASES:** Have any cases been previously filed **in this court** that are related to the present case?   ☒ NO   ☐ YES

If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:

(Check all boxes that apply)   ☐ A. Arise from the same or closely related transactions, happenings, or events; or

☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or

☐ D. Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**X. SIGNATURE OF ATTORNEY
(OR SELF-REPRESENTED LITIGANT):**   _Caroline Reebs_            DATE:  12/18/13

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405 (g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |